[No. 62616-2. En Banc.]
Argued September 22, 1995. Decided May 9, 1996.

BARBARA IWAI, ET AL., *Respondents* v. THE STATE OF WASHINGTON, ET AL., *Petitioners.*

*Christine O. Gregoire, Attorney General,* and *Elizabeth J. Erwin* and *William B. Collins, Assistants,* for petitioners.

*Huppin, Ewing, Anderson & Paul, P.S.,* by *Judith A. Corbin* and *Christopher J. Wright,* for respondents.

*Bryan P. Harnetiaux, Gary N. Bloom,* and *Debra L. Stephens* on behalf of Washington State Trial Lawyers Association, amicus curiae.

DOLLIVER, J. — This is a premises liability case where Plaintiff Barbara Iwai allegedly slipped and fell on snow or ice on an inclined section of Defendants' parking lot. We have heard about slippery slopes countless times, but this is the first case actually involving one. Defendants urge this court formally to adopt the natural accumulation rule for commercial parking lots, which would preclude landowner liability for injuries caused by naturally accumulated snow or ice. Defendants also claim Plaintiffs failed to establish Defendants' notice of the dangerous condition. The trial court granted summary judgment in favor of Defendants, but the Court of Appeals reversed and remanded the matter for trial. We affirm the Court of Appeals.

On November 27, 1984, over seven inches of snow fell in Spokane. On the same day, a contractor plowed Employment Security's parking lot, but apparently no sand was applied after the lot was plowed. From the 27th to the 29th of November, the temperature fluctuated from a high of thirty-six degrees to a low of twenty-eight degrees.

On November 29, 1984, Mrs. Iwai (hereinafter Iwai) knew it was slippery out, and she wore her snow boots when she left her house that morning. She drove to Employment Security's Spokane Job Service Center to check the job postings. Having been to the Center numerous times in the past two weeks, she was familiar with the facilities. When Iwai drove through Employment Security's parking lot, she realized the lot was icy. The parking lot was also covered by a small amount of residual snow. She parked in the only available parking stall, located on a sloped part of the lot far away from the building entrance. Upon exiting her car, Iwai slipped on ice and broke her wrist. After falling, she climbed back into her car and drove to a hospital.

Iwai and her husband sued the State, the Employment Security Department and its commissioner, Isaiah Turner, and the Spokane Job Service Center collectively as the tenant of the parking lot and building. Other named defendants were dismissed below, and the issues for which review has been granted do not involve those dismissed defendants. In the complaint, Plaintiffs assert the Defendants had a duty to maintain the parking lot in a safe condition for invitees, Defendants breached that duty by failing to remedy the dangerous condition of ice in the parking lot, and this failure to act caused Plaintiff Barbara Iwai's fall and injury.

Plaintiffs offered very little evidence to support their negligence claim. Plaintiffs argued there was no sand, gravel, or railings available in the parking lot at the time of Iwai's fall, a claim which Defendants did not refute. However, the absence of those aids does not in itself constitute negligence. The only solid piece of evidence regarding the actual and specific parking lot conditions on the day Iwai slipped is temperature and precipitation information from the National Weather Reports. All other details rest entirely on Iwai's own uncorroborated statements in her deposition and in the complaint. Iwai's deposition offers only the vague and general description of there being ice, covered by a trace amount of snow. Employment Security did not have the opportunity to document the parking lot conditions on November 29th because Plaintiff did not notify Employment Security of the accident until the following week. Defendants dispute that they had any notice of the accident prior to the lawsuit being filed on July 23, 1986.

In the attempt to show that Defendants had notice of the dangerous condition, Plaintiffs deposed John Lester, who was in charge of maintenance for Employment Security's parking lots at the time of Iwai's fall. With the deposition taking place almost five years after the accident, Lester had no specific recollection of the conditions during the month that Iwai fell. Nonetheless, he was questioned in detail about the parking lot.

Lester admits he often received complaints about the condition of the parking lot in the wintertime, and "it wasn't unusual" for cars to spin out and slide towards the office building from the inclined strip of parking where Plaintiff allegedly slipped. Clerk's Papers at 399. It was difficult to maintain that particular strip of parking because cars would fill up all of the parking spaces early in the morning, making it impossible for snow removal equipment to clear the section; and, even after being plowed, ice and snow would fall off of parked cars and build up on the ground. A fire hydrant at the bottom of the inclined section had been hit several times, and knocked off at least twice by sliding cars, eventually leading to the installation of four steel posts to protect the hydrant. Lester "had the most problems trying to keep de-iced." Clerk's Papers at 398. Lester remembered only two separate incidents of persons slipping and falling anywhere in the parking lot during his employment as operations manager.

Besides deposing Lester, Plaintiffs submitted the affidavit of a traffic engineer who inspected the lot on April 17, 1987, over two years after the alleged accident. According to the engineer, persons and cars *"would more probably than not"* be expected to slip without special sanding or de-icing because of the steep nature of the slope. Clerk's Papers at 21. The analysis concludes the parking lot was negligently designed. The affidavit, however, does not say how much ice or snow must be present before the condition "become[s] extremely dangerous," nor does the affidavit claim to have any knowledge of the specific conditions on the day that Iwai slipped. Clerk's Papers at 21. The Defendants strongly challenge the relevance of the engineer's affidavit in their petition for review, but these objections were not raised in the trial court as far as the record reveals.

Besides the weakly argued negligence claim premised on Defendants' duty to keep the lot safe, Plaintiffs also posed a different theory for liability in one set of motion

papers at the trial court level. They argued the ice on which Iwai slipped was directly caused by Defendants' having negligently plowed the lot two days earlier. Although the Court of Appeals relied on this argument in reversing summary judgment, the record offers no evidence to support the argument. The argument is not central to the issues on appeal.

Defendants moved for summary judgment, arguing they owed no duty to protect invitees from natural accumulations of snow or ice. Defendants also challenged the sufficiency of Plaintiffs' pleadings. Defendants argued Plaintiffs failed to demonstrate how the condition causing Iwai's fall was a result of Defendants' negligence, and Defendants claimed Plaintiffs failed to allege Defendants' notice of a specific dangerous condition.

The trial court granted summary judgment for Defendants. The court cited with approval the natural accumulation rule, under which landowners have no duty to clear the natural accumulation of ice and snow. The only way Employment Security could be liable, according to the trial court, was if it voluntarily assumed the duty to remove snow and ice, but failed to act in a reasonable and safe manner. The court found insufficient evidence to demonstrate how Employment Security's plowing the lot two days before Iwai's injury was done in an unreasonable manner so as to cause the accident.

The Court of Appeals cited with approval the natural accumulation rule, but it found that there was a question of fact whether Employment Security was negligent by having the parking lot plowed on the 27th without subsequently sanding the plowed areas. *Iwai v. State*, 76 Wn. App. 308, 316, 884 P.2d 936 (1994) (reversing summary judgment and remanding for trial). We granted review.

I

■ The legal duty owed by a landowner to a person entering the premises depends on whether the entrant

falls under the common law category of a trespasser, licensee, or invitee. *Younce v. Ferguson*, 106 Wn.2d 658, 662, 724 P.2d 991 (1986). Plaintiff's status as an invitee on Employment Security's premises has not been contested.

Historically, landowners had no duty to protect invitees from conditions caused by natural accumulations of snow or ice. *See* 62A Am. Jur. 2d *Premises Liability* § 699 (1990 & Supp. 1995) (discussing landowners' responsibility for snow or ice both on adjacent public sidewalks and on private premises). This traditional position was known as the natural accumulation rule, or the Massachusetts rule, the latter name stemming from *Woods v. Naumkeag Steam Cotton Co.*, 134 Mass. 357, 45 Am. Rep. 344 (1883). Early Washington cases followed this traditional rule in the landlord-tenant context. *See, e.g., Oerter v. Ziegler*, 59 Wash. 421, 109 P. 1058 (1910); *Schedler v. Wagner*, 37 Wn.2d 612, 225 P.2d 213, 230 P.2d 600, 26 A.L.R.2d 604 (1950).

In 1975, this court flatly rejected the Massachusetts rule. *Geise v. Lee*, 84 Wn.2d 866, 529 P.2d 1054 (1975) (imposing the duty on mobile home park owners to keep the driveways between the homes safe for pedestrian traffic where snow and ice created dangerous conditions). *Geise* found the reasoning persuasive in *Reardon v. Shimelman*, 102 Conn. 383, 128 A. 705, 39 A.L.R. 287 (1925):

> The duty of the landlord being to exercise reasonable care to prevent the occurrence of defective or dangerous conditions in the common approaches, the fact that a particular danger arose from the fall of snow or the freezing of ice can afford no ground of distinction. Indeed, the causes which are at work to produce it are no more natural causes than are those which, more slowly, bring about the decay of wood or the rusting of iron. To set apart this particular source of danger is to create a distinction without a sound difference.

*Geise*, 84 Wn.2d at 869 (quoting *Reardon*, 102 Conn. at 388). *Geise* adopted *Reardon*'s position, commonly known as the Connecticut rule, which requires landlords to keep common areas in a safe condition regardless of the cause

of the danger. Recognizing that the landlord is not the guarantor of occupants' safety, *Geise* held a plaintiff must show the landlord had actual or constructive knowledge of the dangerous condition and failed to fix the condition within a reasonable amount of time. *Geise*, 84 Wn.2d at 871.

Despite the ruling in *Geise*, the Court of Appeals, Division Three, recently applied the Massachusetts rule and found no owner liability when a customer slipped in a store's parking lot. *Schaeffer v. Woodhead*, 63 Wn. App. 627, 821 P.2d 75 (1991) (affirming summary judgment for defendant). *Schaeffer* failed to acknowledge *Geise*. The court cited three Washington cases in support of the natural accumulation rule, but all three cases involved lawsuits against private landowners for injuries occurring on adjacent city-owned sidewalks. *Schaeffer*, 63 Wn. App. at 629 (citing *Nadeau v. Roeder*, 139 Wash. 648, 247 P. 951 (1926); *Ainey v. Rialto Amusement Co.*, 135 Wash. 56, 236 P. 801, 41 A.L.R. 263 (1925); *Gardner v. Kendrick*, 7 Wn. App. 852, 503 P.2d 134 (1972), *review denied*, 81 Wn.2d 1009 (1973)).

*Schaeffer* has been cited with approval in one decision by the Court of Appeals, Division One, but in that case the court found the owner potentially liable on other grounds. *Sorenson v. Keith Uddenberg, Inc.*, 65 Wn. App. 474, 828 P.2d 650 (1992) (reversing summary judgment). In *Sorenson* a store had plowed snow into piles in the middle of the parking lot. The melting runoff from the piles ran across the parking lot and re-froze, forming ice on which the plaintiff slipped and fell. The Court of Appeals avoided the natural accumulation rule by holding the landowner liable to invitees if the snow pile was negligently placed. *Sorenson*, 65 Wn. App. at 480.

*Schaeffer*'s adherence to the Massachusetts' rule is an anomaly, and the case has not been followed by most subsequent decisions in this state. Most appellate cases discussing the duties owed to invitees have recognized *Geise* as controlling for all landowners. *See Ford v. Red*

*Lion Inns,* 67 Wn. App. 766, 772, 840 P.2d 198 (1992) (rejecting the natural accumulation rule where guest fell in hotel parking lot), *review denied,* 120 Wn.2d 1029 (1993); *Maynard v. Sisters of Providence,* 72 Wn. App. 878, 882, 866 P.2d 1272 (1994) (following *Ford* where patient's husband fell in hospital parking lot); *Leonard v. Pay'n Save Drug Stores, Inc.,* 75 Wn. App. 445, 450-51, 880 P.2d 61 (1994) (following *Ford* and *Maynard* where customer fell on store-owned sidewalk).

■ The reasoning in *Ford* is clearly consistent with *Geise. Ford* involved a customer who slipped and fell in a snow-covered parking lot of the hotel. The trial court applied the natural accumulation rule and granted summary judgment for the defendant. The Court of Appeals upheld the summary judgment on other grounds, but it observed that the natural accumulation rule had been disapproved by this court in *Geise. Ford,* 67 Wn. App. at 772. Citing *Geise,* the court stated there is no reason to distinguish between unsafe conditions caused by artificial conditions, for which the owner is unquestionably liable, and unsafe conditions caused by natural snowfall. *Ford,* 67 Wn. App. at 772.

*Ford* set forth RESTATEMENT (SECOND) OF TORTS §§ 343 & 343A (1965) as the appropriate tests for determining landowner liability to invitees. *Ford,* 67 Wn. App. at 770 (citing *Jarr v. Seeco Constr. Co.,* 35 Wn. App. 324, 326, 666 P.2d 392 (1983)). RESTATEMENT (SECOND) OF TORTS 343 (1965), entitled Dangerous Conditions Known to or Discoverable by Possessor, states:

> A possessor of land is subject to liability for physical harm caused to his [or her] invitees by a condition on the land if, but only if, he [or she]
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

An invitee's awareness of a particular dangerous condition does not necessarily preclude landowner liability. Section 343A of the RESTATEMENT, entitled Known or Obvious Dangers, states in part:

(1) A possessor of land is not liable to his [or her] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*See Degel v. Majestic Mobile Manor, Inc.*, No. 62312-1, slip op. at 6-7 (Apr. 18, 1996) (adopting sections 343 and 343A) (citing *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 138-39, 875 P.2d 621 (1994)). Mrs. Iwai may have known about the ice in the parking lot, but if Employment Security "c[ould] and should [have] anticipate[d] that the dangerous condition w[ould] cause physical harm to the invitee notwithstanding its known or obvious danger," then section 343A may impose liability. RESTATEMENT (SECOND) OF TORTS § 343A cmt. f (1965). The comment to the RESTATEMENT explains that such anticipation may be found "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [that] position the advantages of doing so would outweigh the apparent risk." *Id.*; *see also Tincani*, 124 Wn.2d at 139-40 (quoting extensively from section 343A, comment f).

The RESTATEMENT gives additional weight to Defendant's status as a government agency, "which maintains land upon which the public are invited and entitled to enter as a matter of public right." RESTATEMENT (SECOND) OF TORTS § 343A(2) cmt. g (1965). In cases where defendants are public utilities or agencies, members of the public can be expected to "encounter some known or obvious dangers which are not unduly extreme, rather than to forego the

right." *Id.* Persons desperately seeking employment can be expected to brave the elements to check for job postings at Employment Security's facilities.

Taken together, *Geise, Ford,* and *Tincani* reject the natural accumulation rule and impose RESTATEMENT (SECOND) OF TORTS §§ 343 and 343A as the appropriate standards for determining landowner liability to invitees. *Degel,* which was decided after this case was argued, also holds both sections of the RESTATEMENT as embodying this state's common law. *Degel,* slip op. at 7. The standards imposed by these sections do not distinguish between artificial and natural conditions—the duty to protect invitees from harm is the same in both situations.

By ignoring *Ford's* well reasoned reading of *Geise,* the trial court and Court of Appeals in this case have failed to apply the correct standard for determining Employment Security's liability. The Court of Appeals was correct in holding Employment Security potentially liable if the dangerous condition was caused by negligent snowplowing. *Iwai v. State,* 76 Wn. App. 308, 316, 884 P.2d 936 (1994); *see Sorenson v. Keith Uddenberg, Inc.,* 65 Wn. App. 474. However, Plaintiffs' primary claim focused on the issue of whether Defendants had a duty to alleviate the hazards presented by natural accumulations of snow and ice. The trial court did not apply the proper standard to Plaintiffs' claim.

## II

Even when analyzed under the proper standard as set forth in the RESTATEMENT, Defendants argue summary judgment was still appropriate because Plaintiffs failed to allege Defendants had knowledge of a specific dangerous condition.

██ In a summary judgment motion, the moving party must first show the absence of an issue of material fact. *Young v. Key Pharmaceuticals, Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The burden then shifts to the non-

moving party to set forth specific facts showing a genuine issue for trial. CR 56(e); *Young*, 112 Wn.2d at 225. An appellate court reviewing a summary judgment must engage in the same inquiry as the trial court. *Young*, 112 Wn.2d at 226. All evidence and all reasonable inferences therefrom should be considered in a light most favorable to the nonmoving party. *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 44, 846 P.2d 552 (1993).

■ ■ To establish the elements of an action for negligence, the plaintiff must show "(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani*, 124 Wn.2d at 127-28. Under the standard set by RESTATEMENT (SECOND) OF TORTS § 343, a landowner's duty attaches only if the landowner "knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk . . . ." The phrase "reasonable care" imposes on the landowner the duty "to inspect for dangerous conditions, 'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.' " *Tincani*, 124 Wn.2d at 139 (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. b).

■ In applying this knowledge requirement to premises liability actions, Washington law requires plaintiffs to show the landowner had actual or constructive notice of the unsafe condition. *See Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 652, 869 P.2d 1014 (1994). Plaintiffs did not claim Defendants had actual notice of the ice on which Iwai slipped. To prove constructive notice, Plaintiffs carry the burden of showing the specific unsafe condition had "existed for such time as would have afforded [the defendant] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger." *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 44, 666 P.2d 888 (1983) (quoting *Smith v. Manning's, Inc.*, 13 Wn.2d 573, 580, 126 P.2d 44 (1942)). The notice requirement insures liability attaches only to

owners once they have become or should have become aware of a dangerous situation. *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 453-54, 805 P.2d 793 (1991) (quoting *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 420-21, 494 P.2d 839 (1972)).

Plaintiffs, relying on the submitted affidavit of a traffic engineer, claim the parking lot, because of the steep slope, was inherently dangerous. However, the alleged icy condition of Employment Security's parking lot on November 29, 1984, was not a continuous condition such that Defendants necessarily knew, or by the exercise of reasonable care should have known, of the danger's existence. The parking lot was sloped, so it *could* become dangerous when *some* amount of snow or ice accumulated on it. The parking lot did have a history of wintertime problems. However, the specific icy patch allegedly causing Plaintiff's fall was a temporary condition, and under the traditional position, Plaintiffs must show the specific and particular condition had existed long enough for Defendants to have become aware of it.

Defendants argue their general knowledge of the parking lot's tendency to get slippery in the wintertime does not constitute constructive notice of the existence of a specific and unreasonably dangerous condition on the day Iwai slipped. Defendants' argument holds some merit. There is no evidence giving any indication of how long the particular icy condition had existed. There is no corroborating evidence of how much snow or ice was on the ground when Iwai fell. The weather report is the only solid evidence submitted by Plaintiffs having any relevance to the conditions on the day of the accident. The sole fact of the temperature being around freezing at the time of Iwai's fall does not sufficiently demonstrate Employment Security "knew or should have known that a dangerous condition existed." *Brant v. Market Basket Stores, Inc.*, 72 Wn.2d 446, 452, 433 P.2d 863 (1967). Plaintiffs failed "to establish how long the specific dangerous condition existed . . . . Under the traditional rule, the

lack of such evidence precludes recovery." *Wiltse*, 116 Wn.2d at 458, (citing *Brant*, 72 Wn.2d at 451-52; *Merrick v. Sears, Roebuck & Co.*, 67 Wn.2d 426, 429, 407 P.2d 960 (1965)). In this particular case, the lack of such evidence would normally support the trial court's grant of summary judgment for Defendants.

■ Although Plaintiffs may have failed to demonstrate Defendants' notice of the condition, our analysis is not complete. This court has created two exceptions to the notice requirement in premises liability cases. If this case falls under either exception, then Plaintiffs need not establish notice as an essential element of their negligence claim.

Under the first exception, if a specific unsafe condition is "foreseeably inherent in the nature of the business or mode of operation," plaintiffs need not prove notice for liability to be imposed. *Wiltse*, 116 Wn.2d at 461. This reasonably foreseeable exception arose in the context of customer injuries in self-service stores. This court formally adopted the position in *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983), where a precariously shelved paint can fell and injured a customer's foot. The plaintiffs argued they should not have to show actual or constructive notice of the condition because the risk of the poorly shelved merchandise falling was foreseeable. *Pimentel*, 100 Wn.2d at 45 (citing *Ciminski v. Finn Corp.*, 13 Wn. App. 815, 537 P.2d 850, 85 A.L.R.3d 991, *review denied*, 86 Wn.2d 1002 (1975)). This court looked to other jurisdictions to see how the reasonably foreseeable argument had been applied. After reviewing three different approaches used in other courts, this court formally adopted the position set forth in Colorado:

> The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary . . . . In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, *when the operating methods*

*of a proprietor are such that dangerous conditions are continuous or easily foreseeable,* the logical basis for the notice requirement dissolves. *Then, actual or constructive notice of the specific condition need not be proved.*

(Italics ours.) *Pimentel,* 100 Wn.2d at 47-48 (quoting *Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 420-21, 494 P.2d 839 (1972)).

In a subsequent case construing the notice exception, this court explained after a dangerous condition is shown to be ongoing or reasonably foreseeable, "[t]he plaintiff can establish liability by showing that the operator of the premises had failed to conduct periodic inspections with the frequency required by the foreseeability of risk." *Wiltse,* 116 Wn.2d at 461 (citing *Pimentel,* 100 Wn.2d at 49).

This court has applied the reasonably foreseeable exception exclusively to self-service type stores because, in those situations,

[i]t is much more likely that items for sale and other foreign substances will fall to the floor . . . . Customers are naturally not as careful in handling the merchandise as clerks would be . . . .

An owner of a self-service operation has actual notice of these problems. In choosing a self-service method of providing items, he is charged with the knowledge of the foreseeable risks inherent in such a mode of operation . . . .

*Ciminski v. Finn Corp.,* 13 Wn. App. 815, 818-19, 537 P.2d 850, 85 A.L.R.3d 991, *review denied,* 86 Wn.2d 1002 (1975).

As recently as 1994, this court stated "[t]here must be a relation between the hazardous condition and the self-service mode of operation of the business." *Ingersoll v. De-Bartolo, Inc.,* 123 Wn.2d 649, 654, 869 P.2d 1014 (1994) (citing *Wiltse*). However, the subsequent analysis conducted by *Ingersoll* minimizes the importance of the above quote. In *Ingersoll* the plaintiff slipped and fell while walking in a shopping mall. The plaintiff tried to argue the

mall was a self-service operation, but we ruled " 'self-service' is not the key to the exception. Rather, the question is whether 'the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.' " *Ingersoll*, 123 Wn.2d at 654 (quoting *Pimentel*, 100 . Wn.2d at 49). Since Marjorie Ingersoll "failed to present evidence that the nature of the Mall's business and its methods of operation are such that the existence of unsafe conditions is reasonably foreseeable" (*Ingersoll*, 123 Wn.2d at 655), we affirmed summary judgment for the defendants.

Although any parking lot without valet parking could be construed as a self-service operation so as to fit under the reasonably foreseeable exception as previously applied by this court, we will refrain from such creative maneuvering. The better response to the facts of this case is to extend the analysis made in *Ingersoll* and dispense with the self-service requirement altogether. The reasonably foreseeable exception to the notice requirement should be applied to any situation, whether or not the mode of business involves self-service, where " 'the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.' " *Ingersoll*, 123 Wn.2d at 654 (quoting *Pimentel*, 100 Wn.2d at 49). Some other jurisdictions support this extension of the reasonably foreseeable exception beyond self-service related injuries. *See, e.g., All v. Smith's Management Corp.*, 109 Idaho 479, 708 P.2d 884 (1985).

In *All*, the plaintiff tripped in a pothole in a store parking lot. The plaintiff was unable to show the owner had actual or constructive knowledge of the specific hole in which she tripped. On the other hand, the plaintiff was able to show the parking lot had been deteriorating, other potholes existed in the lot, and because of these known conditions, the owner was planning to repave the lot. The court cited numerous self-service cases, and then determined the reasonably foreseeable exception should be applied to the dangerous potholes:

[Plaintiff] presented sufficient evidence to establish that the dangerous condition of the parking lot was a continuous and foreseeable consequence of [defendants'] operating methods. The formation of the specific hole into which fell was not an isolated incident . . . . It was enough to show that [defendants] were aware of the continuous formation of potholes in the parking lot through the winter and spring of 1982.

*All*, 109 Idaho at 482.

The reasonably foreseeable exception to the notice requirement has also been applied in cases involving slips caused by tracked-in rain or snow. *See, e.g., Buttrey Food Stores Div. v. Coulson*, 620 P.2d 549 (Wyo. 1980); *F.W. Woolworth Co. v. Stokes*, 191 So. 2d 411 (Miss. 1966). In both cases the plaintiff did not have to show the defendant knew of the specific puddle that caused the accident; rather, defendant's knowledge of the floor's tendency to get slippery when wet, coupled with the knowledge of the wet weather conditions on the day of the fall, made the specific condition reasonably foreseeable. *Buttrey Food Stores Div.*, 620 P.2d at 553; *F.W. Woolworth*, 191 So. 2d at 417.

Plaintiffs' failure to establish actual or constructive notice of the specific dangerous condition should not preclude a trial court from hearing this case. A strict application of the notice requirement would unfairly allow Employment Security to plead ignorance about each patch of ice causing an injury, despite its general knowledge of the situation. Employment Security knew the inclined section of the parking lot became a treacherous slippery slope during the winter months when covered with snow or ice. Even though the ice on which Iwai allegedly slipped was not continuous, a jury could certainly find that its occurrence was foreseeable during inclement weather. If the risk was foreseeable, Employment Security should have maintained a vigilant watch for dangerous buildups of ice and snow. *Wiltse*, 116 Wn.2d at 461.

Plaintiffs have raised factual questions concerning the foreseeability of the dangerous icy conditions of the park-

ing lot. A jury must decide whether such risk was foreseeable, and whether Defendants fulfilled their duties in light of the foreseeability of the risk.

A second exception to the notice requirement also might apply to this case. If the landowner caused the hazardous condition, then a plaintiff's duty to establish notice is also waived. *Carlyle v. Safeway Stores, Inc.*, 78 Wn. App. 272, 275, 896 P.2d 750 (1995) (citing *Pimentel*, 100 Wn.2d at 49). If Plaintiffs can prove Employment Security (or its contractor) created the ice by plowing the lot in a negligent manner, as occurred in *Sorenson v. Keith Uddenberg, Inc.*, 65 Wn. App. 474, 828 P.2d 650 (1992), then Plaintiffs would not have to prove Defendants' notice of the dangerous condition. *Falconer v. Safeway Stores, Inc.*, 49 Wn.2d 478, 480, 303 P.2d 294 (1956) ("The rule requiring such notice is not applicable where the dangerous condition of the premises was created in the first instance by the occupant . . . . One is presumed to know what one does."). As revealed by the record, Plaintiffs offered only the unsupported allegation that the accident was caused by the snowplowing of the lot two days earlier. If Plaintiffs choose to pursue this separate argument on remand and are able to offer more than the mere allegations given in the record, they would not be required to establish Defendants' notice of the condition. For the foregoing reasons, the Court of Appeals is affirmed.

SMITH, JOHNSON, and TALMADGE, JJ., concur.

ALEXANDER, J. (concurring) — While I agree with the result the majority reaches, I disagree with the reasoning set forth in part II of the opinion. I do so because I fear that this portion of the majority opinion may actually increase uncertainty in premises liability law by offering an unclear liability rule. We should avoid that result because, as Holmes said, "the tendency of the law must always be to narrow the field of uncertainty." OLIVER W. HOLMES, THE COMMON LAW 101 (Mark D. Howe ed., 1967).

As the dissent points out, RESTATEMENT (SECOND) OF TORTS §§ 343 and 343A (1965) clearly specify the duties owed by

an occupier of land to his or her invitees. Indeed, this court has adopted and cited with approval §§ 343 and 343A. *See, e.g., Degel v. Majestic Mobile Manor, Inc.*, No. 62312-1, slip op. (April 18, 1996); *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 875 P.2d 621 (1994); *Ford v. Red Lion Inns*, 67 Wn. App. 766, 840 P.2d 198 (1992), *review denied*, 120 Wn.2d 1029 (1993). While the majority acknowledges and discusses these sections, it goes on to discuss and expand the separate "self-service" exception to the notice requirement (described in *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983)) without tying it to the RESTATEMENT sections. This can do nothing but create confusion for occupiers of land, landlords, insurers, trial judges, and practitioners. Furthermore, the expansion of *Pimentel* achieves nothing, since §§ 343 and 343A provide adequate protection to invitees already. In short, the majority has settled on a rule functionally equivalent to the simple standard offered by §§ 343 and 343A from which nothing substantive is gained.

"Law, . . . unlike science, is concerned not only with getting the result right but also with stability." RICHARD A. POSNER, THE PROBLEMS OF JURISPRUDENCE 51 (1990). Stability is best achieved by propounding clear and simple liability rules. Here the Plaintiffs have raised factual questions about whether the Defendants exercised reasonable care in keeping Employment Security's parking lot free from dangerous snow and ice. I agree that a jury, not the court, must decide these questions, but not using the rule the majority sets forth.

GUY, J. (concurring and dissenting) — As to part I of the majority opinion, I fully concur. As to part II, I dissent to the portion of the opinion that holds a landlord liable without actual or constructive notice of a dangerous condition and a reasonable time for repair.

The majority opinion would hold a landlord liable for any dangerous condition on his or her land that is reasonably foreseeable. Authority for this important change in

liability law cited by the majority is *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983) and *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 805 P.2d 793 (1991). In both of these cases, the defendants were self-service stores and the injuries were caused by hazards which were inherent in the nature of the business or mode of operation and within areas where customers served themselves. *Pimentel* and *Wiltse* were cited as authority in *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 654, 869 P.2d 1014 (1994) where the court declared, "There must be a relation between the hazardous condition and the self-service mode of operation of the business." The self-service considerations of *Pimentel* and *Wiltse* were limited to the interior of the store or where customers service themselves. In *Ingersoll*, the court pointed out:

> We note that even if the injury does occur in the self-service department of a store, this alone does not compel application of the *Pimentel* rule. Self-service has become the norm throughout many stores. However, the *Pimentel* rule does not apply to the entire area of the store in which customers serve themselves. Rather, it applies if the unsafe condition causing the injury is "continuous or foreseeably inherent in the nature of the business or mode of operation."

*Ingersoll*, 123 Wn.2d at 653-54 (quoting *Wiltse*, 116 Wn.2d at 461).

Nothing in these cited cases extends the *Pimentel* exception to the general rule that a landlord must have actual or constructive notice of the dangerous condition and a reasonable opportunity for repair beyond the self-service area of a store and into a parking lot. RESTATEMENT (SECOND) OF TORTS § 343 (1965), entitled Dangerous Conditions Known to or Discoverable by Possessor, protects an invitee without making the landlord an insurer against unknown defects on his or her land.

Durham, C.J., Madsen, J., and Pekelis, J. Pro Tem., concur with Guy, J.