IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ERIN BAYNE, an individual,<br><br>               Respondent,<br><br>     v.<br><br>CARLETON FARM, INC., a<br>Washington Corporation,<br><br>               Appellant. | No. 83066-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Erin Bayne sued Carleton Farm for injuries sustained from colliding with a fencepost off the end of a roller slide located on the farm's property. Based on an expert report that the slide's design made it unreasonably dangerous and caused her injuries, Bayne moved for partial summary judgment, requesting that the court rule that Carleton Farm was negligent as a matter of law and dismiss Carleton Farm's affirmative defense of contributory negligence. The court granted the motion.

We conclude that Carleton Farm failed to provide evidence sufficient to raise genuine issues of material fact as to liability and therefore affirm the partial summary judgment on that issue. However, because the evidence establishes a question of fact regarding whether Bayne contributed to her injuries, summary judgment on Carleton Farm's affirmative defense of contributory negligence was improper. We reverse and remand for further proceedings.

.

FACTS

Erin Bayne and her family visited Carleton Farm in October 2019. Bayne's three-year-old stepson wanted to go down the roller slide located in the farm's play area. When the child reached the top of the slide, he became nervous and asked Bayne to go down with him. She agreed and went down the slide with her stepson on her lap. At the end of the slide, their momentum carried them toward a wooden fencepost located approximately six feet in front of the slide's exit. Bayne could not stop in time and hit her face on the fencepost. She suffered a concussion and nasal fractures requiring surgery.

Bayne sued Carleton Farm for negligence, claiming that the farm had breached its duty to maintain the slide so it was reasonably safe because its design and location constituted an unreasonably dangerous condition that caused her injury. Carleton Farm raised several affirmative defenses, including contributory negligence.[1]

Nine months after filing the lawsuit, Bayne filed a motion for partial summary judgment requesting that the court determine that Carleton Farm was negligent as a matter of law and dismiss Carleton Farm's affirmative defense of contributory negligence. In an opposition brief to Bayne's motion, Carleton Farm argued that the motion was premature because questions of material fact precluded summary judgment on contributory negligence and breach of duty. In

---

[1] Carleton Farm pled several affirmative defenses, including assumption of risk and a claim of agritourism immunity under RCW 4.24.832. These additional affirmative defenses are not at issue in this appeal.

the alternative, Carleton Farm requested a continuance under CR 56(f) to allow for discovery relevant to the affirmative defenses and breach of duty.

The trial court granted Bayne's motion for partial summary judgment on both liability and contributory negligence. Carleton Farm filed a motion for reconsideration. The trial court denied the motion for reconsideration as well as the request for a CR 56(f) continuance.[2]

Carleton Farm requested discretionary review of the order granting partial summary judgment. A commissioner of this court granted review.

DISCUSSION

We review orders on summary judgment de novo. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)). The moving party has the initial burden of showing the absence of an issue of material fact. In re Estate of Black, 153 Wn.2d 152, 160-61, 102 P.3d 796 (2004). We construe evidence and reasonable inferences in the light most favorable to the nonmoving party. Id. at 161.

---

[2] In its order denying reconsideration, the trial court specifically addressed Carleton Farm's alternative request for a CR 56(f) continuance. The court concluded that Carleton Farm did not demonstrate a basis for the continuance. The court noted that over nine months had elapsed since Bayne filed the action and Carleton Farm had not identified any defense experts, scheduled depositions, or provided detailed information regarding counsel's efforts to secure declarations or evidence from Carleton Farm. Carleton Farm has not assigned error to the court's denial of the continuance, so it is not before this court.

If the moving party meets this burden, the nonmoving party must set forth specific facts to show a genuine issue for trial. Id. The facts must rebut the moving party's contentions and demonstrate the existence of a genuine issue of material fact. Citibank South Dakota N.A. v. Ryan, 160 Wn. App. 286, 289, 247 P.3d 778 (2011). "[A]n adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." CR 56(e). "An affidavit submitted in support of or in response to a motion for summary judgment 'does not raise a genuine issue of fact unless it sets forth facts evidentiary in nature, i.e., information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion.' " Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 954, 247 P.3d 18 (2011) (quoting Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002)).

Because Bayne moved for partial summary judgment, all inferences are drawn in favor of the nonmoving party, Carleton Farm. The question on review is whether the evidence in the record raises genuine issues of material fact to defeat a motion for summary judgment. Hough v. Ballard, 108 Wn. App. 272, 279, 31 P.3d 6 (2001).

Carleton Farm claims the trial court erred by granting summary judgment because reasonable minds could differ as to each of the necessary elements of Bayne's negligence claim as well as on its affirmative defense of contributory negligence. Bayne responds that Carleton Farm presented no evidence to

establish any genuine issues of material fact. We address the rulings on liability and the affirmative defense in turn.

I.     Bayne's Negligence Claim

To prove negligence, a plaintiff must show (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Generally, whether there has been negligence "is a jury question, unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts." Hough, 108 Wn. App. at 279. "Expert opinions that help establish the elements of negligence are admissible." Davis v. Baugh Indus. Contractors, Inc., 159 Wn.2d 413, 420-21, 150 P.3d 545 (2007).

A.     Existence of a Duty

"[T]he threshold question is whether the defendant owes a duty of care to the injured plaintiff." Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 474, 951 P.2d 749 (1998). The existence of a legal duty is a question of law. Id. In negligence cases based on premises liability, "a person's status, based on the common law classifications of persons entering upon real property (invitee, licensee, or trespasser), determines the scope of the duty of care owed by the possessor" of the property. Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 128, 875 P.2d 621 (1994).

"[A]n invitee 'is ... entitled to expect that the possessor will exercise reasonable care to make the land safe for his [or her] entry.' " Id. at 138-39

5

(quoting RESTATEMENT (SECOND) OF TORTS § 343 (1965), comment b). The

RESTATEMENT (SECOND) OF TORTS § 343 (1965) establishes a landowner's duty of

care to invitees:

> [a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

The undisputed evidence in the record shows the slide is on Carleton

Farm's property. Carleton Farm does not dispute that Bayne was an invitee on its

premises. Thus, there is no issue of material fact as to whether Carleton Farm

had a duty as the landowner to inspect for and remedy dangerous conditions to

keep Bayne safe as an invitee. Iwai v. State Emp. Sec. Dep't, 129 Wn.2d 84, 96,

915 P.2d 1089 (1996).

B.      Breach of Duty

Generally, "[o]nce the issue of legal duty is determined, it is the function of

the trier of fact to decide whether the particular harm should have been

anticipated and whether reasonable care was taken to protect against the harm."

Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 54, 914 P.2d 728 (1996).

1.  Knowledge requirement

To establish a breach of duty, a plaintiff must show that the landowner "(a)

knows or by the exercise of reasonable care would discover the condition, and

should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it." RESTATEMENT (SECOND) OF TORTS § 343 (1965). In most cases, this knowledge requirement necessitates that plaintiffs demonstrate the landowner had actual or constructive knowledge of the unsafe condition. Iwai, 129 Wn.2d at 96. "If the landowner caused the hazardous condition, then a plaintiff's duty to establish notice is also waived." Id. at 102. In its answer to the complaint, Carleton Farm denied that it designed, built, and maintained the slide. Drawing reasonable inferences from this denial, Carleton Farm did not design and build the slide. Thus, we cannot say as a matter of law that Carleton Farm caused the hazardous condition such that Bayne's duty to establish notice is waived.

However, the "reasonable care" standard imposes on the landowner the duty to inspect for dangerous conditions and repair as reasonably necessary to protect invitees. Id. at 96. Bayne argues that the slide constituted a dangerous condition and that, in the exercise of reasonable care, Carleton Farm should have known the slide involved an unreasonable risk of harm to invitees who would not discover or realize the danger.

As proof that Carleton Farm breached its duty of care, Bayne submitted a declaration and report from a biomechanical expert, Jeremy Bauer. Bauer conducted an analysis of the slide using still images from a video showing the slide, as well as the known dimensions of common building materials. According to the expert's report, the slide "was not built with the well-known and nationally

7

recognized safety standards for playground equipment promoted by both the U.S. Consumer Product Safety Commission and the [American Society for Testing Materials] for well over 20 years."

First, the slide was located almost two feet closer to the perimeter fence than specified by the U.S. Consumer Product Safety Commission. The expert calculated the slide was 18.3 feet long and 8.4 feet tall and located 6.3 feet away from the fence. According to the expert, guidelines for public playground safety specified that "[f]or slides greater than 6 feet high, the use zone in front of the exit should be at least as long as the slide is high up to a maximum of 8 feet."[3] Based on the measured height of the slide of 8.4 feet, the expert determined that the bottom of the slide should have been 8 feet from the perimeter fence and fencepost. Instead, the Carleton Farm slide was 6.3 feet from the fence.

Second, the expert's report stated that the slide lacked a "chute exit region" as recommended by the "Public Playground Safety Handbook" published by the U.S. Consumer Product Safety Commission. That handbook states, "All slides should have an exit region to help children maintain their balance and facilitate a smooth transition from sitting to standing when exiting." To achieve this smooth transition, the exit of a typical slide is close to horizontal. The slide at Carleton Farm had a constant slope with no exit area which "provided no opportunity for users of the slide to slow before arriving at the end of the slide." According to the expert, users of the Carleton Farm slide "are directed into the

---

[3] The expert cited the "Public Playground Safety Handbook" published by the U.S. Consumer Product Safety Commission and ASTM F1487-98 "Standard Consumer Safety Performance Specifications for Playground Equipment for Public Use."

ground and required to absorb all of the speed gained on the slide with their legs upon reaching the end of the slide."

Based on his analysis of the slide, Bauer concluded:

The as-built geometry of the slide did not allow for any speed reduction toward the bottom of the slide. The increased velocity at the bottom of the slide prevented Ms. Bayne from achieving a smooth transition from sitting to standing, in violation of CPSC Section "*5.3.6.4 Chute exit region*" which states, "*All slides should have an exit region to help children maintain their balance and facilitate a smooth transition from sitting to standing when exiting.*"

(Italics in original.)

As a result of these flaws, the expert opined that "the slide at Carleton Farms was in an unsafe and unreasonably dangerous condition at the time of the incident." The expert noted, "[t]he hazard presented by the dangerous geometry and close proximity to rigid fence posts should have been observed by risk management personnel with Carleton Farms." Bauer concluded "to a reasonable degree of scientific and biomechanical certainty" that:

1) The slide did not conform with nationally recognized safety standards for playground equipment; 2) The slide at Carleton Farms was in an unsafe and unreasonably dangerous condition at the time of the incident; and 3) In addition to the unsafe and unreasonably dangerous condition of the slide, the slide was placed too close to perimeter fenceposts, subjecting all users, including Ms. Bayne and her child, to unnecessary harm.

This expert opinion provides evidence that the slide was an unreasonably dangerous condition, and Carleton Farm should have known about the hazard. Further, according to the expert evidence, invitees to the property would not discover or realize the danger posed by the slide's design.

9

Carleton Farm contends that "this is not the type of negligence claim in which expert testimony is automatically dispositive." However, expert testimony is permissible to assist with establishing the elements of negligence. See Davis, 159 Wn.2d at 420-21. An expert may not express an opinion that is a conclusion of law, but on any other issues, "ER 704 explicitly provides that '[t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' " Carlton v. Vancouver Care LLC, 155 Wn. App. 151, 168, 231 P.3d 1241 (2010) (psychiatric nurse could give expert testimony as to the "ultimate factual issue of causation" in a case of negligence and abuse of a vulnerable adult); see also Strauss v. Premera Blue Cross, 194 Wn.2d 296, 301, 449 P.3d 640, 642 (2019) (expert opinion on an ultimate question of fact is sufficient to establish a triable issue); Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 351-52, 588 P.2d 1346 (1979) (in products liability case, affidavit from expert opining that design of airplane escape hatch cover created an unreasonably dangerous condition for flight attendants created a genuine issue of fact precluding summary judgment). The expert testimony must be grounded in fact. Sartin v. Estate of McPike, 15 Wn. App. 2d 163, 173, 475 P.3d 522 (2020). Carleton Farm did not object to the admissibility of Bauer's expert report, and the report was part of the record on summary judgment.

To defend against summary judgment, Carleton must put forth specific facts to rebut the moving party's contentions and demonstrate the existence of a genuine issue of material fact. Citibank South Dakota N.A., 160 Wn. App. at 289.

Carleton Farm submitted a declaration from its attorney stating that the former owner of Carleton Farm is out of state and without access to information pertaining to the slide, and that attempts to reach another individual likely to have relevant knowledge had been unsuccessful. Carleton Farm also submitted its answers and responses to Bayne's first discovery requests, and a letter between parties regarding discovery. None of these documents include factual affidavits, expert opinion, deposition testimony, or any other evidence to counter Bayne's expert evidence as to the dangerousness of the slide.

The nonmoving party in a summary judgment may not rely on speculation or argumentative assertions that unresolved factual issues remain. Johnson 159 Wn. App. at 956. For example, in Johnson, the defendant's unsupported speculation that a previous collision damaged the bicycle's back tire and contributed to the front fork detaching from the frame did not raise a genuine issue of material fact in a product liability case. Id. Additionally, defendant's evidence did not refute Johnson's expert's testimony as to the source of the manufacturing defect that caused the structural failure. Id. As a result, summary judgment on liability was proper for the plaintiff. Id.

Similarly, here, even construing evidence in a light favorable to Carleton Farm as the nonmoving party, because any contradicting evidence is lacking, Bayne's expert evidence conclusively demonstrates that the slide's design and placement created an unreasonably dangerous condition. Due to the dangerous geometry as well as the close proximity to rigid fence posts, Carleton Farm should have known about the danger. Carleton Farm has not satisfied its burden

11

to rebut Bayne's evidence that the slide posed an unreasonably dangerous condition about which Carleton Farm should have been aware.

Carleton Farm further argues that summary judgment was improperly granted because "reasonable minds could differ as to whether Carleton should have expected that Ms. Bayne would not discover or realize any danger presented by the roller slide, or that she would fail to protect herself from any such danger." Bayne's expert also opined on this issue, stating that Bayne "should not have expected to encounter the hazard created by the dangerous slide geometry and placement with respect to the fence and fenceposts." Additionally, "[t]he availability of the slide for public use gave Ms. Bayne the expectation that the slide was safe for public use." Again, Carleton Farm makes the assertion that reasonable minds could differ but provides no evidence to rebut the expert opinion. Based on this record, there is no question of fact as to whether Carleton Farm should have expected that invitees would not discover or realize the danger and fail to protect themselves.

2. Exercise of reasonable care to protect invitee against the danger

A landowner has a duty to exercise reasonable care for an invitee's protection. Barker v. Skagit Speedway, Inc., 119 Wn. App. 807, 812, 82 P.3d 244 (2003). "That obligation extends 'to everything that threatens the invitee with an unreasonable risk of harm.' " Id. (quoting W. Page Keeton et al., PROSSER AND KEETON ON TORTS § 61, at 425 (5th ed.1984)). Reasonable care requires the landowner to inspect for dangerous conditions followed by repair, safeguards, or

12

warnings as reasonably necessary to protect the invitee. <u>Tincani</u>, 124 Wn.2d at 139.

As discussed above, Bayne's expert evidence demonstrated that the slide was unreasonably dangerous, open to the public for use, and that risk management personnel should have recognized the hazard. Carleton Farm stated in responses to interrogatories that "There was a warning sign placed at Carleton Farms but its exact location is unknown." It also produced a photograph of a sign to show it had complied with RCW 4.24.835(2), which requires agritourism businesses to post and maintain signs with that notice language. The sign stated the following:

> WARNING
> Under Washington state law, there is limited liability for an injury to or death of a participant in an agritourism activity conducted at this agritourism location if such an injury or death results exclusively from the inherent risks of the agritourism activity. Inherent risks of agritourism activities include, among other, risks of injury inherent to land, equipment, and animals, as well as the potential for you to act in a negligent manner that may contribute to your injury or death. We are required to ensure that in any activity involving minor children, only age-appropriate access to activities, equipment, and animals is permitted. You are assuming the risk of participating in this agritourism activity.

There is no evidence of the location of the sign and, thus, no evidence that this warning was directed specifically toward the slide or users of the slide. Moreover, the sign did not alert slide users to any limitations, restrictions or potential hazards. Therefore, the evidence of the sign does not raise a genuine issue of material fact as to whether Carleton Farm acted with reasonable care to warn invitees of the slide's dangers.

13

Based only on the agritourism warning sign, Carleton Farm claims "reasonable minds could differ as to whether Carleton failed to exercise reasonable care to protect Ms. Bayne from the allegedly dangerous roller slide." But Carleton Farm did not provide any evidence to rebut Bayne's expert. As a result of this failure to counter Bayne's evidence, the trial court had one set of facts to consider. The only facts in the record show that there was a general agritourism warning somewhere on the premises, but no specific precautions taken to warn invitees about, or protect them from, the dangers of the slide. Even drawing all inferences in favor of Carleton Farm, the limited and one-sided evidence means that reasonable minds could reach only one conclusion regarding breach of duty: Carleton Farm failed to exercise reasonable care and, therefore, breached its duty to Bayne.

### C.   Resulting Injury

Bayne produced evidence that she suffered a concussion and a broken nose requiring surgery. Carleton Farm does not dispute that Bayne incurred these injuries after using the slide on its property.

### D.   Proximate Cause

Proximate cause has two elements: cause in fact and legal cause. N.L. v. Bethel School Dist., 186 Wn.2d 422, 436-37, 378 P.3d 162 (2016). Cause in fact, or "but for" causation, refers to the physical connection between an act and an injury. Id. at 437. "The inquiry is whether a reasonable person could conclude that there is a greater probability that the conduct in question was the proximate cause of the plaintiff's injury than there is that it was not." Mehlert v. Baseball of

14

Seattle, Inc., 1 Wn. App. 2d 115, 118-19, 404 P.3d 97 (2017). Causation is ordinarily a question for the jury unless reasonable minds could reach but one conclusion. C.L. v. State Dep't of Soc. & Health Servs., 200 Wn. App. 189, 201, 402 P.3d 346 (2017).

Here, Carleton Farm argues that "reasonable minds could disagree as to whether any allegedly dangerous conditions of the subject roller slide proximately caused Ms. Bayne's injuries." However, Carleton Farm failed to submit any evidence to contradict the expert's report, which stated that the geometry of the slide did not allow for any speed reduction toward the bottom of the slide, and

> As a result, Ms. Bayne's forward momentum prevented her from transitioning smoothly and required multiple steps to attempt to gain her balance. The lack of space between the bottom of the slide and the fence did not give Ms. Bayne adequate room to regain her balance before striking the fence post with her head and face.

Without any evidence to contradict Bayne's expert, reasonable minds can conclude only that the hazardous conditions of the slide were the cause of Bayne's injury.

Carleton Farm's failure to produce facts to rebut Bayne's expert leaves Bayne's prima facie case for negligence as the only source of evidence and only one possible conclusion that a reasonable jury could reach from that evidence. As Bayne has established the elements of negligence in this premise liability action, Carleton needed to provide more than speculation and allegations of genuine issues of material fact to survive summary judgment. Carleton Farm has not met this burden. We affirm the trial court's grant of partial summary judgment on liability in favor of Bayne.

15

II.     Contributory Negligence

Carleton Farm argues the trial court prematurely decided and improperly dismissed its affirmative defense of contributory negligence. Contributory negligence[4] is an affirmative defense "that comes into being only after plaintiff has first established defendant's negligence and liability. Contributory negligence can exist only as a coordinate or counterpart of a defendant's negligence." Godfrey v. State, 84 Wn.2d 959, 964, 530 P.2d 630, 632 (1975). "In order to prove contributory negligence, the defendant must show that the plaintiff had a duty to exercise reasonable care for her own safety, that she failed to exercise such care, and that this failure is a cause of her injuries." Gorman v. Pierce County, 176 Wn. App. 63, 87, 307 P.3d 795 (2013). Whether a plaintiff has been contributorily negligent is a jury question unless the facts are such that all reasonable persons must draw the same conclusions from them. Dunnington v. Virginia Mason Med. Ctr., 187 Wn.2d 629, 638, 389 P.3d 498 (2017).

On summary judgment, we consider whether, in the light most favorable to Carleton Farm, "there was some evidence to create an issue of fact for the jury relating to the affirmative defense." Fite v. Mudd, 19 Wn. App. 2d 917, 929, 498 P.3d 538 (2021). For example, in Fite, the trial court had granted partial summary judgment excluding an affirmative defense that the plaintiff's behavior could have contributed to his being hit by a vehicle while in a crosswalk. Id. at 923. The court

---

[4] The parties use the term contributory negligence rather than comparative fault. Under Washington's comparative fault statute, contributory negligence does not bar recovery, but can reduce damages. RCW 4.22.005. For clarity, we refer to the affirmative defense as contributory negligence. See Dunnington v. Virginia Mason Med. Ctr., 187 Wn.2d 629, 637 n.1, 389 P.3d 498 (2017).

held summary judgment was improper where the defendant produced evidence of plaintiff's admission that he was high on cannabis, and positive urinalysis results created a jury issue regarding an affirmative defense of intoxication. Id. at 928-29. Similarly, in Dunnington, the trial court erred by granting partial summary judgment on a hospital's contributory negligence defense based on the plaintiff patient's delay in returning for care. 187 Wn.2d at 638-39. Viewing the evidence in the light most favorable to the hospital, there was a "clear dispute" as to what the doctor would have recommended had the patient returned for care as directed, so there was a triable issue of fact on the affirmative defense. Id. at 639.

Here, Carleton Farm argues that there are questions of fact pertaining to Ms. Bayne's knowledge and state of mind. It further contends that "a reasonable juror could conclude Ms. Bayne, an adult woman, was negligent by electing to go down a roller slide with her hands occupied and her position compromised by her son on her lap." The evidence includes of a photograph of Bayne on the slide with the child on her lap and one arm around him. Bayne states that the child was nervous and asked her to go down the slide with him, so she did.

The expert concluded that Bayne contacted the fence because her forward momentum prevented her from transitioning smoothly and required her to take multiple steps to regain her balance. As discussed above, absent any evidence rebutting the expert, the expert report was sufficient to establish proximate cause as a matter of law. However, given the evidence that Bayne had the child on her lap and one of her arms was

17

occupied by holding the child on her lap, a reasonable juror could conclude that she contributed to her injuries. Therefore, the evidence creates an issue of material fact regarding contributory negligence.

## CONCLUSION

We affirm the trial court's summary judgment for Bayne on the issue of liability. However, we reverse on the issue of contributory negligence. We remand for further proceedings consistent with this opinion.

_____
Chung, J.

WE CONCUR:

_____          _____
Coburn, J.                                               Bowman, J.