FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 PM 2:34

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| H. CRAIG SCHWEIKART, individually and as Personal representative of the ESTATE OF HELENA M. SCHWEIKART; and DARIC M. SCHWEIKART, individually, and as the Attorney-in-Fact for H. CLINE SCHWEIKART, <br><br> Appellants, <br><br> v. <br><br> FRANCISCAN HEALTH SYSTEM-WEST, d/b/a ST. JOSEPH MEDICAL CENTER, a Washington non-profit corporation; NORTHWEST EMERGENCY PHYSICIANS OF TEAMHEALTH, a Washington corporation; RANDALL KAHNG M.D., a Washington licensed physician; and JOHN DOES 1-10, <br><br> Respondent. | No. 42720-6-II <br><br><br><br><br> UNPUBLISHED OPINION |

PENOYAR, J. — H. Craig Schweikart and Daric M. Schweikart, individually and as the respective representatives of Helena and Cline Schweikart (collectively, the Schweikarts), sued Franciscan Health System-West (FHS), operator of St. Joseph Medical Center, claiming negligence after Helena died from a fall at St. Joseph. The procedure at trial is somewhat convoluted because the trial court granted FHS judgment as a matter of law based on the evidence presented to the jury but let the jury decide whether the Schweikarts had proven negligence under their alternative theory that FHS spoliated the evidence, triggering an inference in favor of a negligence finding. The jury did not find spoliation, and the trial court entered judgment for FHS.

The Schweikarts appeal, arguing that the trial court erred by granting FHS's motion for judgment as a matter of law on their negligence claim and in instructing the jury on FHS's duty as owner of the premises and spoliation. But the trial court's judgment as a matter of law and its instructions on FHS's duty correctly reflected the requirement that the Schweikarts prove that FHS had notice of the unsafe condition. And because the Schweikarts did not object at trial to the court's spoliation instruction, we do not consider their argument that the trial court erred by giving that instruction. Furthermore, the trial court properly exercised its discretion in declining to give the Schweikarts' proposed spoliation instruction because the instruction the court did give on spoliation adequately addressed the good faith/bad faith issue covered by proposed instruction. Accordingly, we affirm.

FACTS

I. BACKGROUND

On April 28, 2005, 83-year-old Helena Schweikart fell near an elevator at St. Joseph Medical Center. She was taken to the emergency room, treated for a dislocated shoulder, and released. The next morning, family members found her unconscious. She died on May 3 from intracranial bleeding.

When Mrs. Schweikart fell near the elevator, security officer Matthew Dunne was sent to the scene to investigate. When Dunne arrived, he saw emergency room staff placing Mrs. Schweikart in a wheelchair so they could take her to the emergency room. Dunne did not notice at that time any hazards on the vinyl composite tile floor where she fell.

Dunne asked if anybody had seen what happened. A woman who had seen the fall gave Dunne a verbal statement that he did not record because he had left his notebook and witness

2

statement forms at the security desk. Dunne also failed to obtain the witness's name and contact information.

Dunne returned to the security desk, retrieved witness statement forms, obtained the incident report number, and then went to the urgent care unit where he recorded Mrs. Schweikart's statement. Mrs. Schweikart told Dunne that she had slipped on water or some other liquid and fallen.[1] Dunne gave her husband a contact card that had the incident report number and instructions to contact Mike Hill, the security system manger, for a copy of the report.

Dunne returned to the scene 30 minutes after the fall, finding neither water on the floor nor the witness who had given Dunne her statement. Dunne began a handwritten report that same day, but did not finish it. When Dunne could not find his handwritten report the next day, his supervisor told him to write the report as he remembered it. When Dunne asked about including the witness's statement in the report, his supervisor instructed him to leave the statement out because, absent her name and address, the witness could not be identified.[2]

When one of Mrs. Schweikart's sons, Grant, went to the security desk to ask for a copy of the report, he was referred to a supervisor, who told Grant that he would have to contact Hill after the report was reviewed. A May 1, 2005, e-mail from a security supervisor to Hill stated

---

[1] John Gastelum, an emergency room technician who helped Mrs. Schweikart after her fall, purportedly testified during his deposition that Mrs. Schweikart's shoes and clothing were wet, though he thought this was because it was raining. No evidence was presented that it was raining that day in that area.

[2] In Dunne's final report, however, he relates what the unidentified witness told Gastelum: "ERT John [Gastelum] then stated the bystander [witness] told him that Mrs. Shweikart [sic] was running to catch the elevator and fell." Clerk's Papers (CP) at 454. At trial, Dunne testified that this was what the witness had told him as well, and that the witness had not told him anything else that was not reflected in his final report.

that Grant Schweikart was trying to get a copy of the report. Hill did not give any of the Schweikarts a copy, but referred them instead to risk management, which also declined to provide them the report.[3]

II.    PROCEDURE

In March 2006, the Schweikarts sued FHS for negligence. FHS moved for summary judgment, arguing that it was not liable because it lacked actual or constructive notice of the condition that caused Mrs. Schweikart's fall. In opposition, the Schweikarts claimed that "the flooring where Helena Schweikart fell was unreasonably dangerous" and that "St. Joseph Medical Center . . . had been notified that the flooring was unreasonably dangerous prior to Mrs. Schweikart's fall." Clerk's Papers (CP) at 31-32. The trial court granted FHS's motion and dismissed the negligence claim with prejudice.

The Schweikarts moved for reconsideration. In their motion, the Schweikarts emphasized their spoliation-of-evidence argument:

> Plaintiffs are entitled to a favorable inference or rebuttable presumption as to the actual existence of a liquid and its duration on the floor given the Defendants['] spoliation of the only independent eye-witness in this case who can testify directly to such a fact. Such an inference or presumption precludes summary judgment in this case as a matter of law.

CP at 91. The Schweikarts also claimed that the trial court had applied the wrong legal duty when it treated the "presence of liquid" and not the flooring itself as the dangerous condition at issue. CP at 91. FHS countered that there had been no spoliation of evidence because, among other things, "the information [the Schweikarts] claim was destroyed (name and contact information for a witness) was never obtained in the first place." CP at 118. FHS also maintained that the trial court had applied the correct actual-or-constructive-notice standard

_____

[3] After the Schweikarts filed this suit, the defendant produced the incident report.

4

when it granted FHS summary judgment on the issue. The trial court granted the Schweikarts' motion for reconsideration and set the matter for trial on the negligence claim, including the spoliation issue.

FHS sought discretionary review of the order granting the Schweikarts' motion for reconsideration.[4] On review, we reasoned that the Schweikarts' spoliation argument hinged on whether Dunne was an FHS employee, and not an independent contractor, such that FHS had control over the evidence.[5] *Schweikart v. Franciscan Health Sys.-W.*, noted at 149 Wn. App. 1038, 2009 WL 826227, at *2-3. Affirming the trial court's denial of summary judgment, we held that material issues of fact existed as to Dunne's status and thus "the fact finder may infer constructive notice if it determines that Dunne was an employee responsible for the spoliation of evidence." *Schweikart*, 2009 WL 826227, at *3.

At trial, the Schweikarts' ergonomics expert, Dr. Gary Sloan, testified that he had tested the slipperiness of the vinyl composite tile flooring at St. Joseph Medical Center in January 2007. Using a specialized cane-like device, Sloan had measured the "slip index" of the flooring when wet. Report of Proceedings (RP) (Sept. 13, 2011) at 170. The measurements resulted in an average low number (less than 0.2) that Sloan described as "equivalent to slipping on ice." RP (Sept. 13, 2011) at 214. Sloan noted that he did not test the hospital flooring when dry because "dry floors are almost always, in my experience, always slip-resistant." RP (Sept. 13, 2011) at 213. Sloan did, however, test some vinyl composite tile he had bought for

---

[4] The trial court certified the matter for discretionary review under RAP 2.3(b)(4).

[5] At the time of Mrs. Schweikart's fall, Dunne was employed by Cognisa Security, with whom FHS contracted for security services.

measurements of its slip-resistance when dry; the resulting high number (0.63) confirmed that it was slip-resistant.

After the Schweikarts rested their case, FHS moved for judgment as a matter of law on the negligence claim, arguing that—the spoliation issue aside—the Schweikarts had presented no evidence that FHS had actual or constructive knowledge of the water on the floor that allegedly caused Mrs. Schweikart to slip and fall. The trial court granted the motion. The case proceeded to trial on the theory that constructive notice of the water on the floor should be attributed to FHS for spoliation of evidence.

The Schweikarts took exception to the court not giving their proposed jury instructions 13 and 15 on FHS's duty as premises owners[6] and their proposed instruction 27 on spoliation.[7]

---

[6] The Schweikarts' proposed instruction 13 reflected 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 120.06.01, at 17 (2011) (WPI):

> An owner of premises owes to a business invitee a duty to exercise ordinary care for his or her safety. This includes the exercise of ordinary care to maintain in a reasonably safe condition those portions of the premises that the invitee is expressly or impliedly invited to use or might reasonably be expected to use.

CP at 264. The Schweikarts' proposed instruction 15 reflected WPI 120.07, at 24:

> An owner of premises is liable for any physical injuries to its business invitees caused by a condition on the premises if the owner:
> (a) knows of the condition or fails to exercise ordinary care to discover the condition, and should realize that it involves an unreasonable risk of harm to such business invitees;
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and
> (c) fails to exercise ordinary care to protect them against the danger.

CP at 266.

[7] The Schweikarts' proposed instruction 27 stated: "A party may be responsible for spoliation of evidence without acting in bad faith." CP at 279.

6

The Schweikarts also objected to the court's instruction 16, reflecting 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 120.06.02, at 20 (2011), which sets forth a landowner's obligation once aware of a dangerous condition on the land. The Schweikarts did not object to the court's spoliation instruction.[8] The Schweikarts also had no objection to the court's special verdict form, which asked the jury to find, among other things, whether any spoliation of evidence had occurred.

By special verdict, the jury found that FHS had not spoliated evidence concerning Mrs. Schweikart's fall. Accordingly, the trial court entered judgment for FHS. The Schweikarts appeal.

---

[8] The court's instruction on spoliation—instruction 15—stated:

> Spoliation means the destruction of relevant evidence. When a party fails to produce relevant evidence without satisfactory explanation, you may infer that such evidence would be unfavorable to the party that failed to produce the evidence.
>
> To determine if there is spoliation in this case, you may weigh (1) the potential importance or relevance of the missing evidence, and (2) the culpability or fault of the party that failed to preserve the evidence.
>
> To determine the culpability or fault of the party that failed to preserve the evidence you may consider that party's (1) good or bad faith, (2) whether that party had a duty to preserve the evidence, and (3) whether that party knew that the evidence was important to this pending litigation.
>
> If you find spoliation, you may use that evidence only in determining whether to infer actual or constructive notice of a temporary unsafe condition. (See Instruction No. 16). You may not use evidence of spoliation for any other purpose other than whether to infer actual or constructive notice to defendant of a temporary unsafe condition.

CP at 336.

7

## ANALYSIS

### I.   NEGLIGENCE

The Schweikarts argue that the trial court erred by granting FHS's motion for judgment as a matter of law on the negligence issue and by failing to properly instruct the jury. The jury instructions properly reflected that Washington law continues to require a showing that the landowner was or should have been aware of the specific dangerous condition that caused the injury. Because no evidence was presented on how long the alleged spill had been on the floor and because mere knowledge that the floors *could* become dangerous when wet is legally insufficient to prove notice, we affirm.

### A.   Judgment as a Matter of Law

We review judgment as a matter of law de novo and apply the same standard as the trial court. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 530-31, 70 P.3d 126 (2003). "Judgment as a matter of law is not appropriate if, after viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences, substantial evidence exists to sustain a verdict for the nonmoving party." *Schmidt v. Coogan*, 162 Wn.2d 488, 491, 173 P.3d 273 (2007). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Corey v. Pierce County*, 154 Wn. App. 752, 761, 225 P.3d 367 (2010).

The Schweikarts argue that it was error to grant FHS's motion for judgment as a matter of law because it is for the jury to decide whether FHS exercised reasonable care in selecting the flooring and discovering the spill. But it is clear under the law that, to prove negligence, the Schweikarts were first required to prove that FHS knew or should have known of the condition that caused the fall.

8

As an initial matter, we must determine what the unsafe condition was that caused Mrs. Schweikart's fall. FHS maintains that the allegedly unsafe condition was the temporarily wet flooring where Mrs. Schweikart fell. But the Schweikarts counter that the flooring itself, with its propensity to become very slippery when wet, was the inherently unsafe condition.

The plaintiff in *Iwai v. State*, 129 Wn.2d 84, 97, 915 P.2d 1089 (1996), made the similar argument that the steep slope in the parking lot where she slipped and fell when the slope became icy on a late November day was itself the inherently dangerous condition. But the court rejected that argument:

> [T]he alleged icy condition of [defendant's] parking lot on November 29, 1984, was not a continuous condition such that Defendants necessarily knew, or by the exercise of reasonable care should have known, of the danger's existence. The parking lot was sloped, so it *could* become dangerous when *some* amount of snow or ice accumulated on it. The parking lot did have a history of wintertime problems. However, the specific icy patch allegedly causing Plaintiff's fall was a temporary condition, and under the traditional position, Plaintiffs must show the specific and particular condition had existed long enough for Defendants to have become aware of it.

*Iwai*, 129 Wn.2d at 97.

Much as the court reasoned in *Iwai*, the alleged wet condition of FHS's flooring on April 28, 2005, was not a continuous condition such that FHS necessarily knew, or by the exercise of reasonable care should have known, of the danger's existence. The flooring was smooth vinyl flooring so it *could* become dangerous when *some* amount of water or other liquid was on it.[9]

---

[9] Notably, the vinyl composite tile flooring was safely slip-resistant when dry.

The flooring did have a history of some slips and falls when wet.[10] The specific allegedly wet patch causing Mrs. Schweikart's fall, however, was a temporary condition. Thus, the question is whether the Schweikarts proved that FHS had notice of the condition.

Relying on *Iwai*, the Schweikarts argue that either "a jury must decide whether a landowner exercised reasonable care where it failed to discover a dangerous condition that resulted in an invitee's death or serious injury," Br. of Appellants at 16, or "a jury must decide whether water being on the floor and causing the dangerous situation was reasonably foreseeable." Br. of Appellants at 20. But *Iwai* does not mandate either of these conclusions here, and FHS correctly asserts that, under well-established Washington law, to prove liability, the Schweikarts must show that FHS had actual or constructive notice of the particular patch of allegedly wet flooring that caused Mrs. Schweikart's fall.

In *Iwai*, the Washington Supreme Court noted that RESTATEMENT (SECOND) OF TORTS §§ 343 and 343A[11] provide "the appropriate standards for determining landowner liability to invitees."[12] 129 Wn.2d at 95. RESTATEMENT (SECOND) OF TORTS § 343 states:

> A possessor of land is subject to liability for physical harm caused to his [or her] invitees by a condition on the land if, but only if, he [or she]
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

---

[10] For example, FHS noted in its written motions in limine that it "has produced to plaintiffs 57 Incident Reports of falls at St. Joseph during the period July 1, 2002 through June 2005," but then explained that of all these falls over this four year period, only two falls—excluding Mrs. Schweikart's—were attributable to a slippery floor inside the hospital. CP at 163.

[11] RESTATEMENT (SECOND) OF TORTS § 343A, dealing with dangers on land that are known or obvious to invitees, is not applicable here.

[12] Here, the parties do not dispute that Helena Schweikart was an invitee of FHS.

10

> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Iwai*, 129 Wn.2d at 93-94. The *Iwai* court also noted that Washington law requires a plaintiff to show that a landowner had actual or constructive notice of the unsafe condition on the premises. 129 Wn.2d at 96 (citing *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 652, 869 P.2d 1014 (1994)). A plaintiff proves constructive notice by showing that "the specific unsafe condition had 'existed for such time as would have afforded [the defendant] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'" *Iwai*, 129 Wn.2d at 96 (quoting *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 44, 666 P.2d 888 (1983) (alteration in original)). "The notice requirement insures liability attaches only to owners once they have become or should have become aware of a dangerous situation." *Iwai*, 129 Wn.2d at 96-97 (citing *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 453-54, 805 P.2d 793 (1991)).

The *Iwai* court, however, pointed out that two exceptions to this notice requirement exist: notice is not necessary if a specific unsafe condition is "'foreseeably inherent in the nature of the business or mode of operation,'" 129 Wn.2d at 98 (quoting *Wiltse*, 116 Wn.2d at 461), or "[i]f the landowner caused the hazardous condition," 129 Wn.2d at 102. The first of these exceptions originated in *Pimentel*, where a paint can fell off a store shelf and onto the plaintiff's foot. 100 Wn.2d at 41. In reversing a verdict for the defendant, the *Pimentel* court held that "where the operating procedures of any store are such that unreasonably dangerous conditions are continuous or reasonably foreseeable, there is no need to prove actual or constructive notice of such conditions in order to establish liability for injuries caused by them." 100 Wn.2d at 40.

This holding, however, was limited to the self-service[13] areas of stores.[14] *Pimentel*, 100 Wn.2d at 49-50.

A hospital—like St. Joseph Medical Center—is not a self-service establishment subject to the *Pimentel* exception. *See Kangley v. United States*, 788 F.2d 533, 534 (9th Cir. 1986) (citing *Pimentel* but applying state law requiring notice of the unsafe condition that caused a slip and fall in an army hospital). Indeed, the Schweikarts do not attempt to argue that the hospital is such an establishment. Consequently, the facts concerning Mrs. Schweikart's fall in April 2005 are outside the ambit of the *Pimentel* exception. Further, the Schweikarts did not produce any evidence that FHS caused the flooring on which Mrs. Schweikart fell to become wet. Therefore, neither of the *Iwai* exceptions to the notice requirement applies and the Schweikarts must show that FHS had actual or constructive notice of the unsafe condition occasioning Mrs. Schweikart's fall.

The spoliation issue aside, the Schweikarts did not produce any evidence that FHS knew or should have known of a spill. Absent this evidence, the Schweikarts' claim on this issue fails, and the trial court properly granted FHS's motion for judgment as a matter of law.[15]

---

[13] "A self-service area is a location where 'customers serve themselves, goods are stocked, and customers handle the grocery items, or where customers otherwise perform duties that the proprietor's employees customarily performed.'" *Fredrickson v. Bertolino's Tacoma, Inc.*, 131 Wn. App. 183, 191, 127 P.3d 5 (2005) (quoting *O'Donnell v. Zupan Enters., Inc.*, 107 Wn. App. 854, 859, 28 P.3d 799 (2001)). "Self-service departments are areas of a store where customers serve themselves. In such areas, where lots of goods are stocked and customers remove and replace items, 'hazards are apparent.'" *Coleman v. Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 219, 853 P.2d 473 (1993) (quoting *Wiltse*, 116 Wn.2d at 461).

[14] The Supreme Court subsequently confirmed that the *Pimentel* rule was limited to self-service areas. *Wiltse*, 116 Wn.2d at 461-62. Although four justices in *Iwai* sought to extend the rule outside of self-service areas, their plurality opinion is not binding precedent. *Fredrickson*, 131 Wn. App. at 192.

B.      Jury Instructions

"[J]ury instructions are sufficient if 'they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied.'" *Cox v. Spangler*, 141 Wn.2d 431, 442, 5 P.3d 1265 (2000) (quoting *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995)). "On appeal, jury instructions are reviewed de novo, and an instruction that contains an erroneous statement of the applicable law is reversible error where it prejudices a party." *Cox*, 141 Wn.2d at 442. "An error is prejudicial if it affects the outcome of the trial." *Anfinson v. FedEx Ground Package Sys., Inc.*, 159 Wn. App. 35, 44, 244 P.3d 32 (2010). In reviewing a trial court's discretion to give a particular instruction, we will not overturn the decision unless it was manifestly unreasonable or based on untenable grounds or untenable reasons. *Stiley v. Block*, 130 Wn.2d 486, 498, 925 P.2d 194 (1996); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The Schweikarts argue that the trial court erred by failing to give their proposed instructions on FHS's duty and by instead giving instruction 16. They argue that these errors "mislead [sic] the jury by giving them an incomplete view of the law." Br. of Appellant at 29. Their arguments fail. First, the Schweikarts' proposed instructions contain the same foreseeability and reasonable-care theories that we have rejected in the preceding discussion. Second, instruction 16 properly and completely informed the jury of the applicable law.

Instruction 16 stated:

> An owner of premises has a duty to correct a temporary unsafe condition of the premises that was not created by the owner, and that was not caused by negligence on the part of the owner, if the condition was either brought to the actual attention of the owner or existed for a sufficient length of time and under

---

[15] This ruling contemplated, however, that the Schweikarts could still establish constructive notice through inference if the jury found spoliation.

such circumstances that the owner should have discovered it in the exercise of ordinary care.

CP at 337. The instruction imposed on FHS a duty to correct a temporary unsafe condition on its premises if FHS had actual or constructive notice of that condition. And no direct evidence was presented at trial indicating that any temporary unsafe condition was created by FHS or caused by FHS's negligence. Accordingly, the trial court acted within its discretion in giving this instruction and declining to give the two instructions on premises liability that the Schweikarts proposed.

II.    SPOLIATION

Finally, the Schweikarts assign error to the trial court's instructions on spoliation. However, with one exception, the Schweikarts did not raise any of these claims of error at trial. For instance, the Schweikarts argue that the trial court erred by giving instruction 15 on spoliation because that instruction misstated the law.[16] But, after the trial court gave the Schweikarts the opportunity to object to this instruction at trial, the Schweikarts did not do so. We will not review these unpreserved arguments here. RAP 2.5(a).

The only claim of error regarding jury instructions on spoliation that the Schweikarts have preserved for appeal is their exception to the trial court's declining to give their proposed instruction 27. This instruction posited that "[a] party may be responsible for spoliation of evidence without acting in bad faith." CP at 279. The Schweikarts argue that by not giving this

---

[16] According to instruction 15, two of the factors the jury was to consider in finding spoliation were (1) "the potential importance or relevance of the missing evidence," and (2) "the culpability or fault of the party that failed to preserve the evidence." CP at 336. We note—as the Schweikarts point out—that the court of appeals has used these two factors to determine not whether spoliation occurred, but whether a rebuttable presumption sanction applies when spoliation is already evident. *See Henderson v. Tyrrell*, 80 Wn. App. 592, 607, 609-11, 910 P.2d 522 (1996).

instruction, the trial court misstated the law on spoliation. Appellants' Br. at 43 (citing *Henderson*, 80 Wn. App. at 605; *Homeworks Constr., Inc. v. Wells*, 133 Wn. App. 892, 900, 138 P.2d 654 (2006) ("[T]he *Henderson* opinion suggests that spoliation encompasses a broad range of acts beyond those that are purely intentional or done in bad faith. It is possible, therefore, that a party may be responsible for spoliation without a finding of bad faith.") (citation omitted).

We will not overturn a trial court's decision to omit an instruction unless that decision was manifestly unreasonable or made on untenable grounds or for untenable reasons. *See Stiley*, 130 Wn.2d at 498; *Junker*, 79 Wn.2d at 26. Here, the trial court's decision to not give this instruction was proper. The trial court's instruction 15 on spoliation—to which the Schweikarts did not object—did not dictate that bad faith was necessary to find spoliation; bad faith was only one of several factors the jury could consider in finding spoliation. Moreover, by not defining spoliation as the *intentional* destruction of relevant evidence—as it could have[17]—but by defining spoliation simply as the destruction of relevant evidence, the court's instruction did not imply some requirement of bad faith. Rather, the court's instruction implied the substance of the Schweikarts' proposed instruction, namely, that bad faith was not required to find spoliation. The trial court's decision to omit the Schweikarts' instruction, therefore, was not unreasonable and did not result in a misstatement of the law.

The trial court applied negligence law correctly in this case, which required the Schweikarts to present evidence of how long the floor Mrs. Schweikart slipped on had been wet. Because the Schweikarts did not produce this evidence, the trial court's judgment as a matter of law and jury instructions were proper. Having failed to object to the trial court's instruction on

---

[17] *See Henderson*, 80 Wn. App. at 605 (defining spoliation as "'[t]he *intentional* destruction of evidence.'" (quoting BLACK'S LAW DICTIONARY 1401 (6th ed. 1990)) (emphasis added) (alteration in original)).

spoliation, the Schweikarts cannot now argue that it was improper. And this instruction adequately covered the Schweikarts' proposed instruction on spoliation that the trial court declined to give. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

I concur:

_____
Hunt, P.J.

BJORGEN, J. (concurring) — Although I agree with most of the majority's analysis, I write separately because the *Iwai* plurality's reasoning for extending the *Pimentel* exception beyond self-service operations is sound. *Iwai v. State*, 129 Wn.2d 84, 915 P.2d 1089 (1996); *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983).

*Pimentel*, 100 Wn.2d at 49-50, recognized an exception to the general rule that a proprietor is liable to an invitee for an unsafe condition only if the condition was caused by the proprietor or its employees or if the proprietor had actual or constructive notice of the condition. Under that exception, the requirement to show actual or constructive notice is eliminated "only if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." *Pimentel*, 100 Wn.2d at 50.

In reaching its holding, *Pimentel*, 100 Wn.2d at 46, noted case law examining injuries in modern stores where customers serve themselves and concluded that "modern techniques of merchandising necessitate some modification of the traditional rules of liability." The appeal before it dealt with an injury in a Fred Meyer store, and the court confined its decision to that situation: a store where customers serve themselves.

The rationale for the court's holding, however, is broader. *Pimentel*, 100 Wn.2d at 47-48, rested its holding on the rule adopted by the Colorado Supreme Court in *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 420-21, 494 P.2d 839 (1972), that "'when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves.'" *Pimentel*, 100 Wn.2d at 47-48 (quoting *Jasko*, 177 Colo. at 421. Thus, even though *Pimentel* constrained its holding to the facts before it, the rule it consulted in reaching that holding has a much wider wingspan.

42720-6-II

A Washington Supreme Court decision after *Pimentel* also suggests a broader application. In *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 654, 869 P.2d 1014 (1994), our Supreme Court noted that

> "self-service" is not the key to the [Pimentel] exception. Rather, the question is whether "the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable."

(quoting *Pimentel*, 100 Wn.2d at 49). Significantly, this recognition came after the court's characterization of *Pimentel* as a limited rule for self-service operations in *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 461, 805 P.2d 793 (1991).

In *Iwai*, after reviewing case law and underlying policy, a plurality of four justices decided to dispense with the self-service requirement and, after *Ingersoll*, to ask whether "'the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Iwai*, 129 Wn.2d at 99-100 (quoting *Pimentel*, 100 Wn.2d at 49). For the reasons above and those stated by the *Iwai* plurality, this is the more fitting standard. Even though the advent of self-service stores decades ago may have first illustrated the soundness of this standard, its rationale applies with equal force to other establishments, such as hospitals.

However, because the limitation of the *Pimentel* exception to self-service operations has not yet been modified by the Supreme Court, I concur in the result.

_____
BJORGEN, J.

18