[No. 32916-6-II.   Division Two.   December 13, 2005.]

ALAN A. FREDRICKSON ET AL., *Appellants*, v. BERTOLINO'S TACOMA, INC., ET AL., *Respondents*.

*John S. Moceri* (of *Manza Moceri, P.S.*), for appellants.

*Gerrit J. Ayers* and *Melanie T. Stella* (of *Burgess Fitzer, P.S.*), for respondents.

¶1 ARMSTRONG, J. — Alan Fredrickson appeals a summary judgment dismissing his personal injury claim against Bertolino's coffee shop. Fredrickson alleges that he was injured when a chair he sat in at Bertolino's broke. The trial court granted summary judgment because Fredrickson presented no evidence that Bertolino's either actually or constructively knew the chair was defective. Fredrickson argues that because Bertolino's way of doing business created an ongoing danger of injury from old chairs, he was not required to prove knowledge. We disagree with Fredrickson and therefore affirm.

## FACTS

¶2 Detective Alan Fredrickson purchased coffee at Bertolino's coffee shop. When he sat down at a table in the shop, the chair broke and gave way. Fredrickson claims that he was injured as a result.

¶3 At the time, William Easley owned and managed Bertolino's. When Easley purchased the coffee shop in 1995, the decor consisted of antique-looking, mismatched, wooden tables, chairs, and book cases. Easley maintained that aesthetic after he became the owner.

¶4 Easley considered himself an active manager. He testified that he arrived at the shop at 5:00 A.M. each day, seven days a week, "to make sure everything was working, whether it was the equipment or the chairs." Clerk's Papers (CP) at 33. Over the course of a week, he would inspect each chair, focusing on the ones he knew were questionable or "were going in the direction of needing to be thrown out or fixed." CP at 38. He also tested the chairs by sitting in them. Sometimes customers told him when chairs were wobbly or needed to be fixed, although no customer before Fredrickson had ever complained of being injured by a

chair. Between the time Easley purchased the shop in 1995 and Fredrickson's fall in 2001, Easley received about three complaints concerning chairs.

¶5 Easley asserts that when a wobbly or unstable chair came to his attention, he would immediately fix it or throw it away and replace it with another. He generally purchased replacement chairs at garage sales and antique shops, and sometimes at Fred Meyer. Easley repaired broken chairs himself because he was "accustomed to woodwork." CP at 33. He owned a construction business and occasionally built houses in the afternoons while managing Bertolino's in the mornings. Easley estimated that he threw away four chairs a year and that he repaired another four to five a year.

¶6 Sarah Erickson, a Bertolino's barista, stated:

> [B]ased upon my best recollection of the day, my knowledge of our everyday customer traffic patterns and the habit and routine of Bertolino's service and care of its employees, I know one or more persons sat at that location that morning before the plaintiff sat there. I observed no one having difficulties with any of our chairs that morning, nor did anyone complain about the condition of the chair the plaintiff broke.

CP at 22.

¶7 Brooke Giesbrecht, another Bertolino's employee, witnessed the incident while working at a computer near the chair that broke. Giesbrecht was certain that someone sat in the chair before Fredrickson sat in it. She also asserts,

> [a]lthough Bertolino's has antique-looking chairs, the coffee shop took good care of them. I often observed Willie Easley inspecting the chairs. I even recall him disposing of a couple of chairs when they became too rickety. I also observed him bringing in chairs from his vehicle after repairing them.

CP at 25.

¶8 Fredrickson sued Bertolino's for negligently furnishing and maintaining its premises. Bertolino's moved for summary judgment, arguing that Fredrickson presented no evidence that (1) it had actual or constructive notice the

chair would collapse under Fredrickson's weight and (2) it failed to exercise reasonable care to protect Fredrickson from the danger of a collapsing chair.

¶9 In response, Fredrickson argued that he did not have to prove notice because it was reasonably foreseeable that, due to the operations at Bertolino's, a customer could be injured by a breaking chair. He also argued that there was sufficient evidence to create an issue of fact whether Bertolino's had constructive knowledge that the chair could break. The trial court disagreed and granted Bertolino's motion for summary judgment.

## ANALYSIS

### I. Summary Judgment

¶10 We review a summary judgment de novo. *See Retired Pub. Employees Council of Wash. v. Charles*, 148 Wn.2d 602, 612, 62 P.3d 470 (2003). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Charles*, 148 Wn.2d at 612. We consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wagg v. Estate of Dunham*, 146 Wn.2d 63, 67, 42 P.3d 968 (2002); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

### II. Liability to Business Invitees

¶11 To establish the elements of his claim, Fredrickson had to show "(1) . . . duty . . . , (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994) (citing *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984)). The legal duty owed by a landowner to a person entering the premises depends on whether the

entrant falls under the common law category of a trespasser, licensee, or invitee. *See Younce v. Ferguson*, 106 Wn.2d 658, 662, 724 P.2d 991 (1986). The parties do not contest that Fredrickson was an invitee.

¶12 Generally, a business owner is liable to an invitee for an unsafe condition on the premises if the condition was " 'caused by the proprietor or his employees, or the proprietor [had] actual or constructive notice of the unsafe condition.' " *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 460, 805 P.2d 793 (1991) (quoting *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983)); *see also Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 652, 869 P.2d 1014 (1994) (citing *Smith v. Manning's, Inc.*, 13 Wn.2d 573, 126 P.2d 44 (1942)).

¶13 Reasonable care requires a landowner to inspect for dangerous conditions, " 'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.' " *Tincani*, 124 Wn.2d at 139 (alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. b (1965)). Constructive notice arises where the condition " 'has existed for such time as would have afforded [the proprietor] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.' " *Ingersoll*, 123 Wn.2d at 652 (alteration in original) (quoting *Smith*, 13 Wn.2d at 580).[1] Ordinarily, it is a question of fact for the jury whether, under all of the circumstances, a defective condition existed long enough so that it would have been discovered by an owner exercising reasonable care. *Coleman v. Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 220, 853 P.2d 473 (1993) (citing *Morton v. Lee*, 75 Wn.2d 393, 450 P.2d 957 (1969)).

¶14 Fredrickson asserts that Bertolino's had constructive notice that the chair was not safe because its chairs

---

[1] The plaintiff must establish that the defendant had, or should have had, knowledge of the dangerous condition in time to remedy the situation before the injury or to warn the plaintiff of the danger. *Ingersoll*, 123 Wn.2d at 652 (citing *Brant v. Mkt. Basket Stores, Inc.*, 72 Wn.2d 446, 451-52, 433 P.2d 863 (1967)).

were typically purchased used, there was no "system" for inspecting the chairs, and the chairs were not repaired by a trained carpenter. But Fredrickson presented no evidence that antique or "used" chairs pose an unreasonable risk of harm to the customers; nor did he present evidence that other chairs had broken and injured customers at Bertolino's in the past. Fredrickson admitted in deposition that he did not know what was wrong with the chair or what caused it to collapse. And he presented no evidence that Easley or any other employee at Bertolino's knew or had reason to know that the chair at issue was dangerous.

¶15 Fredrickson complains that Bertolino's inspection procedures were inadequate, asserting that there was no "system." Br. of Appellant at 7. But he offered no evidence that Easley failed to inspect the chairs or that his inspection routine did not meet industry standards. In contrast, Easley testified that he visually and physically inspected chairs daily, paying closer attention to the chairs he had repaired or ones he thought might need repairing in the near future. Further, he explained that once he discovered a chair was in need of repair or throwing out, he would immediately fix it or replace it with a new chair. Giesbrecht corroborated that "[a]lthough Bertolino's has antique-looking chairs, the coffee shop took good care of them." CP at 25. She stated that she "often observed Willie Easley inspecting the chairs." CP at 25. She confirmed that he disposed of chairs when they became rickety or he repaired them. Fredrickson offered no evidence to the contrary.

¶16 Fredrickson also theorizes that the repairing procedures were inadequate because Easley was "not a trained carpenter." Br. of Appellant at 8. But Easley testified that he owned his own construction business and, on occasion, built houses while managing Bertolino's. Fredrickson presented no evidence that Easley was not competent to repair the chairs himself. Moreover, he offered no evidence that Easley had repaired the chair that broke or that faulty repairs caused the chair to break.

¶17 In short, Fredrickson presented no evidence that Bertolino's had either actual or constructive notice of any problem with the chair.

## III. The *Pimentel*[2] Exception

¶18 Fredrickson claims that he does not have to show actual or constructive notice because the danger of breaking chairs at Bertolino's was unreasonable, continuous, or reasonably foreseeable. An injured business invitee may be excused from proving notice if the unsafe condition causing the injury is " 'continuous or foreseeably inherent in the nature of the business or mode of operation.' " *Ingersoll*, 123 Wn.2d at 653-54 (quoting *Wiltse*, 116 Wn.2d at 461). But courts have so far applied the exception only to self-service establishments.[3] *See Pimentel*, 100 Wn.2d at 40; *O'Donnell v. Zupan Enters., Inc.*, 107 Wn. App. 854, 858-59, 28 P.3d 799 (2001); *Carlyle v. Safeway Stores, Inc.*, 78 Wn. App. 272, 276, 896 P.2d 750 (1995); *Coleman*, 70 Wn. App. at 217.[4] A self-service area is a location where "customers serve themselves, goods are stocked, and customers handle the grocery items, or where customers otherwise perform duties that the proprietor's employees customarily performed." *O'Donnell*, 107 Wn. App. at 859 (citing *Coleman*, 70 Wn. App. at 219). Further, the hazardous condition must be related to the self-service mode of oper-

---

[2] *Pimentel*, 100 Wn.2d 39.

[3] Other divisions of the Court of Appeals in Washington have agreed that the *Pimentel* exception applies solely to self-service entities. In *Carlyle*, Division Three expressly held that the *Pimentel* exception is a limited rule for self-service operations and applies only to specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation. *Carlyle v. Safeway Stores, Inc.*, 78 Wn. App. 272, 276, 896 P.2d 750 (1995). In *Coleman*, 70 Wn. App. at 219, Division One held that *Pimentel* did not apply to defective tire-tread carpeting found in the entryway of a store because the store's entry was not part of its self-service area or operation.

[4] The exception was first noted by the Court of Appeals in *Ciminski v. Finn Corp.*, 13 Wn. App. 815, 537 P.2d 850 (1975). There, the plaintiff slipped and fell on a slippery substance near the counter of a cafeteria-type restaurant. *Ciminski*, 13 Wn. App. at 820. The superior court dismissed the plaintiff's negligence claim on summary judgment. The Court of Appeals reversed, holding that certain risks are inherent in the mode of operation in self-service operations, so the plaintiff need not prove notice. *Ciminski*, 13 Wn. App. at 820, 823-24.

ating the business. *Ingersoll*, 123 Wn.2d at 654 (citing *Wiltse*, 116 Wn.2d at 461).

¶19 For example, in *O'Donnell*, 107 Wn. App. at 856, the injured person slipped and fell on a piece of lettuce in the check-out aisle of a grocery store where customers were responsible for unloading their grocery items from their grocery carts onto the conveyor belt at the check-out stand. *O'Donnell*, 107 Wn. App. at 857. There, the court applied the *Pimentel* exception because the check-out aisle was a self-service area and the hazard was reasonably foreseeable and related to the self-service nature of the check-out aisle. *O'Donnell*, 107 Wn. App. at 858-59. In contrast, in *Wiltse*, 116 Wn.2d at 456, the plaintiff slipped and fell on water that had dripped from a leak in a store's roof. The court refused to apply the *Pimentel* exception because the hazard was unforeseeable and in no way related to the store's self-service operation. *Wiltse*, 116 Wn.2d at 456.

¶20 In *Iwai v. State*, 129 Wn.2d 84, 915 P.2d 1089 (1996), four justices sought to extend the *Pimentel* exception, reasoning that " ' "self-service" is not the key to the exception.' " *Iwai*, 129 Wn.2d at 100 (internal quotation marks omitted) (quoting *Ingersoll*, 123 Wn.2d at 654). In the lead opinion, Justice James M. Dolliver wrote that the only question is whether " 'the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.' " *Iwai*, 129 Wn.2d at 100 (internal quotation mark omitted) (quoting *Ingersoll*, 123 Wn.2d at 654). But in the absence of a majority, the *Iwai* lead opinion is not binding precedent and, so far, no Washington court has extended *Pimentel* beyond the self-service setting. *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 593, 973 P.2d 1011 (1999) (" 'where there is no majority agreement as to the rationale for a decision, the holding of the court is the position taken by those concurring on the narrowest grounds' " (quoting *Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998))); *see also Roy Supply, Inc. v. Wells Fargo Bank*, 39 Cal. App. 4th 1051, 1067, 46 Cal. Rptr.

2d 309 (1995) (stating that "[i]t is well established that an opinion that expresses the views of less than a majority of the members of the court is not precedent"). Accordingly, we decline to extend *Pimentel* here.

¶21 Moreover, even if we applied *Pimentel*, Fredrickson has not shown that the seating area at Bertolino's is a self-service area. Specifically, he has not shown that customers "serve themselves" in the Bertolino's seating area; and he has presented no evidence that customers in the seating area perform duties that a proprietor's employees would customarily perform. Further, he has not shown how any hazardous condition posed by the chairs relates to any self-service aspect of Bertolino's.

¶22 Nor has Fredrickson established that the danger of breaking chairs was continuous or foreseeably inherent in the nature of Bertolino's business. Easley testified that he has never had an incident where a chair gave way either partially or completely under a customer. And no customer has ever complained of a breaking chair injury. Fredrickson has not shown that there is anything inherently dangerous about running a coffee shop equipped with used furniture. The evidence of one broken chair is not sufficient to establish that antique chairs are inherently or foreseeably dangerous.

¶23 Affirmed.

VAN DEREN, A.C.J., and HOUGHTON, J., concur.

Review denied at 157 Wn.2d 1026 (2006).