# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARK HAUBRICH, | No. 49540-6-II |
| Appellant, | |
| v. | |
| THE PIZZA SPECIALISTS INC. dba BREWERY CITY PIZZA COMPANY #3, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Mark Haubrich appeals the superior court's grant of summary judgment in favor of The Pizza Specialists, Inc., doing business as Brewery City Pizza Company #3 (Pizza Specialists), and dismissing Haubrich's negligence claim. Specifically, Haubrich argues that the superior court erred when it found that (1) Baird's declaration and report failed to provide a sufficient foundation for his opinions, (2) there was no genuine issue of material fact as to Pizza Specialists's actual or constructive notice of the dangerous condition, and (3) there was no genuine issue of material fact as to Pizza Specialists's lack of reasonable care. We affirm.

FACTS

A. THE INCIDENT

On August 9, 2012, Haubrich went to eat with a friend at a Pizza Specialists restaurant. Haubrich sat outside on the deck. After about 45 minutes, Haubrich's chair broke and he hit the ground. Haubrich had a three inch cut on his right thigh and was bleeding. The chair had broken where the arm attached to the seat.

Evan Huff, an assistant general manager at the restaurant, spoke to Haubrich, who began yelling and saying the chair cut him. Haubrich declined medical attention.

Huff called Pizza Specialists's owner, Dennis Gard, to inform him of the incident. Gard got to the restaurant about 15 minutes after Huff called him. Gard saw the broken chair, took it out of service, and stored it.

B.     THE DECK AND CHAIRS

Generally, the deck at the restaurant would be set up from spring to September or October, if the outside temperature was in the 70s. Pizza Specialists had no written procedures regarding the use of chairs for outside seating. But directions regarding the chairs were discussed at general manager meetings and in-store manager meetings. Employees were orally directed to do a "look/see" of all the equipment when the deck was set up in the morning but were not instructed every day. Clerk's Papers (CP) at 310. It was the opening manager's responsibility to set up the deck and look at the items to see if they were functional. If something was unsafe, it was not used. The deck chairs were stored in an alcove under an overhang and stacked five high.

Huff had set up the deck hundreds of times. When Huff set up the deck, he checked the arms of the chairs to make sure they were stable with no cracks or frays. Huff did not sit in each chair, but he pushed down on the arm rests of the chairs to make sure they were stable and not wobbly or weak. Over the past 11 years, Huff had found two chairs that were unacceptable because they felt weak, and he took them out of use. Huff had never heard of nor seen any other incidences of chairs breaking at the restaurant.

Gard estimated that the chair in question was purchased in about 2004 or 2005.[1] Gard did not know of any other customers who reported that a chair broke while in use or that a chair was broken. But Gard knew of at least two previous occasions where a chair was taken out of service because of a crack, fissure, or something similar.

C.     NEGLIGENCE CLAIM AND MOTION FOR SUMMARY JUDGMENT

On May 8, 2015, Haubrich filed a negligence claim against Pizza Specialists. Haubrich alleged that Pizza Specialists caused his fall on August 9, 2012, by creating a dangerous condition on its premises and failing to properly inspect or correct the condition. The superior court issued a case scheduling order and set August 8, 2016 as the deadline for disclosure of rebuttal witnesses and September 6 as the cutoff date for discovery.

On August 1, 2016, Haubrich disclosed that he might call Tom Baird, a safety investigator and expert, to provide opinions based on his education, training, and experience, as to the safety issues and violations that caused Haubrich's injuries. Haubrich also provided Baird's curriculum vitae.

On September 8, Pizza Specialists filed a motion for summary judgment. Pizza Specialists alleged that it did not owe a duty to Haubrich because it did not have any actual or constructive notice of the dangerous condition and it had exercised reasonable care.

D.     BAIRD REPORT

On September 23, Haubrich responded to the motion for summary judgment and filed a declaration and report from Baird. In his declaration, Baird stated he was a certified walkway

---

[1] New chairs were purchased in spring 2014.

safety auditor; certified XL Tribometrist (relating to pedestrian slip resistance on walkway surfaces); certified legal investigator; certified forensic consultant with an expertise in safety issues in personal injury/wrongful death matters; certified safety manager; served on various national committees relating to floor safety and trip hazards on walking surfaces, stairs, steps, and ramps; investigated and consulted on other cases involving falls on chairs; and had owned and operated two restaurants. Baird also stated that he conducted a site inspection at the restaurant on August 25, 2016, and reviewed pictures of the broken chair.[2] He also reviewed the complaint and answer, requests for production and answers, several depositions, and the motion for summary judgment. In his declaration and report, Baird opined that the "chair that collapsed was in an unreasonably hazardous and dangerous condition at the time of the incident and had exceeded its useful life." CP at 37. Baird stated:

> The chair had deteriorated to the point that it broke and collapsed. It had been purchased in 2004-2005, 7-8 years prior to the incident and was used every year from Spring to September-October. The chair had a three-year warranty. It had been stored outdoors for 7-8 years and had been exposed to extreme weather conditions during that time period. The deterioration of the chair over the years caused a weak point where the chair arm meets the leg causing it to break.

CP at 37.

Baird also opined that the "restaurant did not have an effective chair inspection program in place to assure that the chairs were safe for customers." CP at 37 (emphasis omitted). Baird supported his opinion by citing to the chair manufacturer's recommendation that the chairs should be carefully inspected for signs of damage, should not be stacked more than four feet high, and that the useful life of the chairs depended on "the extent of its exposure to ultraviolet light, extreme

---

[2] The record does not show that Baird physically inspected the chair in question.

4

cold temperatures, frequency and manner of use, and the likelihood of misuse or abuse." CP at 38 (emphasis omitted). Baird relied on Gard's statement that there were no written procedures for use or inspection of the chairs, the chairs were stored in an alcove on the deck, and the chairs were stacked five high. Baird also relied on Huff's statement that if something was unsafe or not functioning properly, they did not set it up, and when he put the chairs out, he checked their arms, making sure they were stable with no cracks or frays.

On September 29, Pizza Specialists filed a motion to exclude Baird's declaration and report because the disclosure of Baird's opinions and report occurred after the discovery cutoff date. On September 30, Pizza Specialists filed a motion to strike Baird's declaration and report because the report was not timely disclosed, Baird was not qualified to provide an opinion on the chair's structural integrity, and the report did not provide a basis for his opinion on the chair's structural integrity.

E.   SUMMARY JUDGMENT HEARING

On October 7, the superior court held a hearing on the motion to exclude Baird's declaration and report, the motion to strike Baird's declaration and report, and the motion for summary judgment. Pizza Specialists argued that Baird's declaration and report should not be considered on summary judgment because it was not properly disclosed and was provided after the discovery cutoff date. Pizza Specialists also argued that Baird's declaration should be stricken because Baird was not qualified as an expert to provide an opinion on why the chair broke, Baird did not conduct any structural or material analysis, and Baird's opinion on inspection procedures lacked a factual basis.

In response, Haubrich admitted that, at most, the report was disclosed 15 days late. Haubrich argued that Baird was qualified as a safety expert under ER 702 and that his opinions on Pizza Specialists's inspection procedures were not conclusory but based on his experience as a safety consultant and having run two restaurants.

The superior court granted summary judgment in favor of Pizza Specialists and dismissed Haubrich's claims. In reaching its decision, the superior court considered Baird's report but stated that the report lacked a basis for Baird's opinions. Specifically, the superior court stated that the report did not contain any information to establish that Baird was an expert that could provide an opinion on the plastic chair nor any basis for saying that the chair was structurally dangerous. The superior court also stated that the report did not include any basis for saying that there was an industry standard that required a certain kind of inspection. The superior court found that Baird's declaration and report "d[id] not provide a foundation for his opinion regarding how or why the chair broke" and "did not provide an adequate foundation for his opinions concerning the chair inspections." CP at 351.

Haubrich appeals.

## ANALYSIS

A. LEGAL PRINCIPLES

We review summary judgment orders de novo. *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 435, 359 P.3d 753 (2015). Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c).

The moving party bears the initial burden to establish that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 654, 266 P.3d 229 (2011). Once the moving party meets its burden, the nonmoving party must set forth specific facts to show the existence of a genuine issue of material fact. *Id*. The nonmoving party may not rely on "mere allegations, argumentative assertions, conclusive statements, and speculation to raise issues of material fact precluding a grant of summary judgment." *Id*. We draw all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004).

In order to succeed on a claim of negligence, a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury. *Nichols v. Peterson Nw, Inc.*, 197 Wn. App. 491, 501, 389 P.3d 617 (2016).

B.    BAIRD'S OPINIONS

Haubrich argues that the superior court erred when it found that Baird did not have a sufficient foundation for his opinions. We disagree.

1.    Legal Principles

Evidence submitted in opposition to summary judgment must be admissible. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). "Courts may not consider inadmissible evidence when ruling on motions for summary judgment." *Orris v. Lingley*, 172 Wn. App. 61, 67, 288 P.3d 1159 (2012), *review denied*, 177 Wn.2d 1020 (2013).

Under CR 56(e), a declaration must be limited to matters that would be admissible in evidence. *Southwick v. Seattle Police Officer John Doe #s 1-5*, 145 Wn. App. 292, 301, 186 P.3d 1089 (2008). CR 56(e) requires "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Under ER 702, if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Experience is sufficient to qualify a witness as an expert. *Acord v. Pettit*, 174 Wn. App. 95, 111, 302 P.3d 1265, *review denied*, 178 Wn.2d 1005 (2013).

Conclusory or speculative expert opinions lacking an adequate foundation are inadmissible. *Stedman v. Cooper*, 172 Wn. App. 9, 16, 292 P.3d 764 (2012). An opinion must be supported by sufficient foundational facts. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.,* 126 Wn.2d 50, 104, 882 P.2d 703 (1994). An expert may not testify about information outside his area of expertise. *In re Marriage of Katare*, 175 Wn.2d 23, 38, 283 P.3d 546 (2012), *cert. denied*, 568 U.S. 1090 (2013). "'Whether an expert is qualified to testify is a determination within the discretion of the trial court.'" *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 232, 393 P.3d 776 (2017) (quoting *Miller v. Peterson*, 42 Wn. App. 822, 832, 714 P.2d 695, *review denied*, 106 Wn.2d 1006 (1986)).

2.      Foundation for Baird's Opinion

Baird's report opined that the "chair that collapsed was in an unreasonably hazardous and dangerous condition at the time of the incident and had exceeded its useful life."  CP at 37 (emphasis omitted).  Baird's report also opined that the "restaurant did not have an effective chair inspection program in place to assure that the chairs were safe for customers."  CP at 37 (emphasis omitted).

Haubrich argues that Baird could provide an opinion on the structural integrity of the plastic chair and on the restaurant's inspection program because he had owned two different restaurants, had investigated nearly 1,300 injury cases, and was a certified safety manager and forensic consultant.  But the record shows that Baird's experience predominantly involved premises liability in the form of slips, trips, falls, and other related issues, and a review of his curriculum vitae shows that his experience is mainly in the construction and occupational safety settings.  Baird makes a single statement that he had "investigated and consulted on other cases involving falls on chairs," but there is nothing to indicate that he is qualified to provide an expert opinion on the structural integrity of plastic chairs or the adequacy of plastic chair inspection programs.  Also, Baird's experience as an owner of two restaurants fails to show that he had any knowledge, skill, experience, training, or education regarding the useful life of plastic chairs or the adequacy of an inspection program for plastic chairs.

Haubrich failed to show that Baird had any knowledge, skill, experience, training, or education to opine on the structural integrity of plastic chairs or chair inspection programs.

Therefore, the superior court did not abuse its discretion in finding that Baird lacked a sufficient foundation for his opinions.[3]

C.      ACTUAL OR CONSTRUCTIVE NOTICE

Haubrich argues that there is a genuine issue of material fact regarding whether Pizza Specialists had actual or constructive notice of any defect in the chair.  We disagree.

Generally, a business owner is liable to an invitee[4] for an unsafe condition on the premises if the condition was caused by the owner or his employees, or the owner had actual or constructive notice of the unsafe condition.  *Fredrickson v. Bertolino's Tacoma, Inc*., 131 Wn. App. 183, 189, 127 P.3d 5 (2005), *review denied*, 157 Wn.2d 1026 (2006).  Constructive notice occurs when the condition has existed for such time as would have afforded the owner sufficient opportunity, in the exercise of ordinary care, to have properly inspected the premises and removed the danger.  *Id*.

In *Fredrickson*, a customer got hurt while sitting in a chair.  *Id*. at 186.  The owner of the coffee shop inspected the chairs each morning.  *Id*.  Customers would sometimes tell the owner when chairs were wobbly or needed to be fixed, but no customer ever complained of being injured

---

[3] Pizza Specialists argues that we should not consider Baird's report because it is not admissible evidence.  However, the superior court expressly stated it considered Baird's report in its summary judgment ruling, and Pizza Specialists does not cross-appeal.  *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 756, 162 P.3d 1153 (2007) (Our duty is to review a trial court's ruling on summary judgment on the record that was before the trial court.).  Therefore, we need not address this argument.

[4] The duty owed by a landowner to a person entering the premises depends on whether the person is a trespasser, licensee, or invitee.  *Fredrickson*, 131 Wn. App. at 188-89.  A person is an invitee if he or she is a business visitor invited onto the property to conduct business with the possessor of the land.  *Smith v. Stockdale*, 166 Wn. App. 557, 568, 271 P.3d 917, *review denied*, 174 Wn.2d 1013 (2012).  Haubrich argues that he was an invitee and Pizza Specialists does not dispute this claim.

by a chair. *Id*. at 186-87. The owner estimated that he threw away four chairs a year and repaired another four to five chairs a year. *Id*. at 187. The court held that no evidence was presented to show that the owner had actual or constructive notice of any problem with the chair. *Id*. at 191.

### 1.    Actual Notice

Here, like in *Fredrickson*, there was no evidence that Pizza Specialists was aware of any defects in the chair that broke. The employees at Pizza Specialists were directed to do a "look/see" of all the equipment when the deck was set up in the morning. CP at 310. And the opening manager was responsible for setting up the deck and looking at the chairs to see if they were functional. When Huff would set up the deck, he checked the arms to make sure they were stable with no cracks or frays. Huff pushed down on the arm rests of the chairs to make sure they were stable and not wobbly or weak. If something was unsafe, it was not set up. Other chairs had broken in the past, and cracks and fissures had been reported by managers to Gard before. But Gard did not know of any other customers reporting a chair breaking while in use or that a chair was broken. Over the past 11 years, two chairs were found unacceptable and taken out of use.

Haubrich argues that Pizza Specialists had actual notice of the issues with the chairs because Gard testified that "there were some cracks and fissures reported to me." CP at 308. However, Gard's testimony was only about other chairs. The proper inquiry is whether Pizza Specialists had any notice that the actual chair that broke was in an unsafe condition. *See id*. No such evidence was presented. Thus, Haubrich failed to show that Pizza Specialists had actual notice that the broken chair was unsafe.

2. Constructive Notice

Haubrich also argues that Pizza Specialists had constructive notice of the issues with the chair. Haubrich points to Baird's opinion that the chair was in an unreasonably dangerous condition and had exceeded its useful life. As discussed above, there was insufficient foundation for Baird's opinion.[5]

Haubrich also failed to present evidence on how long the chair had been in an unsafe condition. This would have been necessary as constructive notice exists only when the condition has existed for such time as would have afforded the owner sufficient opportunity, in the exercise of ordinary care, to have properly inspected the premises and remove the danger. *Id.* at 189. Thus, Haubrich failed to present any evidence that Pizza Specialists had constructive notice that the chair that broke here was unsafe or dangerous.[6]

---

[5] Regardless, Baird noted that the chairs only had a three-year warranty, were stored outside and had been exposed to extreme weather conditions, and that deterioration over the years caused a weak point in the chair where it broke. But there is no evidence as to whether a manufacturer's warranty translates to a chair's useful life, what the useful life of the chair actually means, what weather conditions the chair was actually exposed to, and why such circumstances rendered the chair unreasonably dangerous. The nonmoving party may not rely on mere allegations or conclusory statements to preclude summary judgment. *Spradlin Rock*, 164 Wn. App. at 654. Thus, Haubrich could not rely on the mere allegation in Baird's declaration that the chair was unreasonably dangerous and had exceeded its useful life to create a genuine issue of material fact.

[6] Haubrich cites to *Iwai v. State*, 129 Wn.2d 84, 915 P.2d 1089 (1996), to claim that Pizza Specialists's business and operating methods were such that the dangerous conditions were reasonably foreseeable. The court in *Iwai* sought to extend the rule articulated in *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983)—that when the operating methods of a business are such that dangerous conditions are continuous or easily foreseeable, actual or constructive notice of the specific condition need not be proved—beyond self-service establishments. 129 Wn.2d at 99-100. However, we expressly declined to extend the *Pimentel* rule beyond self-service establishments because *Iwai* was not a majority decision. *Fredrickson*, 131 Wn. App. at 192-93 ("[T]he *Iwai* lead opinion is not binding precedent and, so far, no Washington court has extended

D.      EXERCISE OF REASONABLE CARE

Haubrich argues that there is a genuine issue of material fact regarding Pizza Specialists's lack of reasonable care.  We disagree.

"A customer is entitled to expect that the business owner will exercise reasonable care to make the premises safe for his or her entry." *Smith v. Stockdale*, 166 Wn. App. 557, 568, 271 P.3d 917, *review denied*, 174 Wn.2d 1013 (2012).  Reasonable care requires an owner to inspect for unsafe conditions, repair such conditions, and provide safeguards or warnings that may be reasonably necessary to protect an invitee under the circumstances.  *Fredrickson*, 131 Wn. App. at 189.

In *Fredrickson*, the owner of the coffee shop inspected the chairs each morning.  *Id*. at 186.  But there was no formal "system" for inspection.  *Id*. at 190.  We held that the customer failed to present any evidence that the owner "failed to inspect the chairs or that his inspection routine did not meet industry standards."  *Id*.

Here, like in *Fredrickson*, the evidence shows that despite there not being any written procedures for use of chairs for outside seating, Pizza Specialists's employees were directed to do a "look/see" of all the equipment when the deck was set up in the morning.  CP at 310.  If something was unsafe, it was not set up.  Huff also stated that when he set up the deck, he checked the arms to make sure they were stable with no cracks or frays by pushing down on the arm rests of the chairs to make sure they were stable and not wobbly or weak.

*Pimentel* beyond the self-service setting. . . . Accordingly, we decline to extend *Pimentel* here." (citations omitted)).

Haubrich relies on Baird's report and opinion that the "restaurant did not have an effective chair inspection program in place to assure that the chairs were safe for customers," an "effective safety program has written policies and procedures," and that no evidence was presented to show "the restaurant carefully inspect[ed] each chair for damage." CP at 37, 39. However, again, as discussed above, there was insufficient foundation for Baird's opinion.[7]

No evidence was presented to create a genuine issue that Pizza Specialists lacked reasonable care. Therefore, we hold that the superior court did not err.

ATTORNEY FEES AND EXPENSES

Both parties request costs and fees under RAP 18.1 as the prevailing party. Under RAP 18.1, attorney fees and expenses may be granted if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." However, merely citing to RAP 18.1 is insufficient for an award of fees. *Faulkner v. Racquetwood Vill. Condo. Ass'n*, 106 Wn. App. 483, 487, 23 P.3d 1135, *review denied*, 145 Wn.2d 1011 (2001). The parties here do not provide any applicable law granting the right to recover attorney fees or expenses. Therefore, we decline to award any such fees.

---

[7] Regardless, Baird's opinion that the restaurant did not have an effective chair inspection program and statement that an effective chair inspection program has written policies and procedures do not show that Pizza Specialists failed to exercise reasonable care. The lack of such a formal program and written procedures do not show that Pizza Specialists actually failed to reasonably inspect the chairs. And although Baird's report stated that no evidence was presented to show the restaurant "carefully" inspected the chairs, Baird failed to state the industry standard for inspection of plastic chairs or what a "careful" inspection entailed. CP at 39.

No. 49540-6-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, P.J.

_____
Melnick, J.